JOHANNA C. HANFELD, as Executrix, etc., Plaintiff, v. A. BROIDO, INC., Defendant.

Municipal Court of New York, Borough of Manhattan, Fifth District, April 11, 1938.

*Charles A. Strauss* [*A. Georges Sidelle* of counsel], for the plaintiff.

*Martin N. Whyman*, for the defendant.

GENUNG, J. Plaintiff on March 13, 1937, leased to defendant a store and basement for business purposes, the term to commence May 1, 1937. In this action for rent for the months of January, February and March, 1938, and for damages caused by the failure of the defendant to make repairs, the defendant pleads as a counterclaim its damages arising out of the refusal of plaintiff to repair radiators as a result of which in January, 1938, defendant's stock in trade was damaged.

The lease, *inter alia*, provides that the tenant shall make all repairs and that the landlord is exempt from liability for any damage whether caused by the landlord's negligence or otherwise, and plaintiff now moves to strike out the counterclaim and for partial summary judgment for the rent for the month of January, 1938, claiming that the clause in the lease is a bar to the maintenance of the counterclaim.

The provision against liability is identical with the clause in the lease in the case of *Kirshenbaum* v. *General Outdoor Advertising Co., Inc.* (258 N. Y. 489), where the Court of Appeals held that such clause, if it did not contravene public policy, relieved the landlord of any obligation to make repairs. The court there further held that " Stipulations between a landlord and tenant, determining which shall bear a loss arising from non-repair or mis-repair of the tenement, and which shall be immune, are not matters of public concern.   *   *   *   We think it clear that public policy does not condemn the immunity clause voluntarily agreed upon by these parties."

However, in 1937 the Legislature enacted section 234 of the Real Property Law (Laws of 1937, chap. 907, in effect June 5, 1937), which provides that such an agreement "shall be deemed to be void as against public policy and wholly unenforceable."

That which conflicts with the morals of the time, and contravenes any established interest of society, may be said to be " against public policy." Public policy does not mean simply sound or good policy but it means the policy of the State established for the public weal either by law or by judicial decisions.

The decisions of the courts which expressed a different view as to the public policy of the State so far as these immunity provisions are concerned, have been superseded by the statute.

" Public policy is necessarily variable. It changes with changing conditions. It is evidenced by the expression of the will of the Legislature contained in statutory enactments. Whatever the term may imply in other jurisdictions, in this State ' the courts have often found it necessary to define its juridical meaning, and have held that a State can have no public policy except what is to be found in its Constitution and laws. * * * Therefore, when we speak of the public policy of the State, we mean the law of the State, whether found in the Constitution, the statutes or judicial records.' (*People* v. *Hawkins*, 157 N. Y. 1, at p. 12.) " (*Straus & Co.* v. *Canadian Pacific R. Co.*, 254 id. 407, 413.)

The statute indicates a change in the policy of the law for the Legislature has the power to decide what that policy shall be and that will should be recognized and obeyed. (*Johnson* v. *United States* 163 Fed. 30, 32; *S. & C. A. Commercial Co.* v. *Panama R. R. Co.*, 237 N. Y. 287, 291.)

The question remains, however, as to whether the statute applies to this lease, executed prior to the enactment of the statute.

Generally statutes operate in the future only. They are not given a retrospective operation or effect if susceptible of any other construction and in case of doubt they must be construed to have a prospective effect only. (*Ketcham* v. *Wilbur*, 231 App. Div. 874; affd., 256 N. Y. 525; *Deuscher* v. *Cammerano*, 230 App. Div. 867.)

The statute does not, in express terms, vitiate the provision in the existing leases, but provides that the covenant or agreement " shall be deemed to be void as against public policy and wholly unenforceable." The act (as shown by its title) is one " in relation to *prohibiting* agreements exempting lessors from liability," so it may not be said that the Legislature has specifically made the statute retroactive.

In *Autocar Sales & Service Co.* v. *Hansen* (270 N. Y. 414) the Court of Appeals held that an amendment to the Personal Property

Law respecting resales under conditional sales contracts was not retroactive, saying that the statute " gives no indication on its face that it was the intention of the Legislature to make it retroactive. As a general rule of construction legislation speaks for the future and is not retroactive except in matters which pertain merely to procedure." (See, also, *Haefelin* v. *Jacob*, 106 App. Div. 163.) So likewise was it held that the " emergency Rent Laws " were not retroactive and hence did not affect leases executed prior to the enactment. (*Orinoco Realty Co.* v. *Bandler*, 233 N. Y. 24.)

The rights and obligations of the parties were fixed by their agreement of lease " and no statute subsequently passed should be construed to have the effect of enlarging or diminishing such rights or obligations." (*Draper* v. *Draper & Sons*, 201 App. Div. 770, 772; *Addiss* v. *Selig*, 264 N. Y. 274; *Jacobus* v. *Colgate*, 217 id. 235.) To construe the act as being retrospective, might result in its being declared unconstitutional. Any law which in its operation amounts to a denial or obstruction of rights accruing by a contract is directly obnoxious to the prohibition of the Constitution. (*McCracken* v. *Hayward*, 2 How. [U. S.] 608, 612; *Barnitz* v. *Beverly*, 163 U. S. 118, 125.)

In *Randall* v. *Sackett* (77 N. Y. 480) the defendants had executed a bond on appeal. The law at that time was that upon the death of a joint obligor, his estate was released. Subsequent to the execution of the bond the Legislature enacted section 758 of the Code which changed that rule and permitted the bringing in of the proper representatives of the decedent as parties to the action. The Court of Appeals affirmed an order denying plaintiff's motion to revive and continue the action against decedent's executors, saying that " The Federal Constitution forbids the passage of any law by a State impairing the obligation of contracts, and hence this provision cannot have the effect claimed upon such undertakings executed before its enactment. * * * An obligation is impaired when it is made worse for either party thereto." The court further held that the provision was not merely remedial. " On the contrary, it imposes an obligation where none existed before. It enlarges the force and scope of an existing contract, and this no act of the Legislature can do."

The case of *Curtis* v. *Leavitt* (15 N. Y. 9) does not lay down a contrary doctrine. There the court held that the repeal of the usury statute as to corporations, " thus leaving the contracts in full force according to their terms, * * * liable to no constitutional objection " (p. 85). The court further held that the instruments there in question were governed, in any event, by the laws of England and did not violate the English usury laws.

The lease provides that the tenant shall at its "own cost and expense make all repairs." It had possession of the store and basement and claims that plaintiff "failed to repair a leaking radiator" as a result of which defendant's goods stored in the basement were damaged. In the absence of proof that the damage was caused by the negligence of the landlord, the defendant would in any event have no cause of action in tort against the plaintiff. (*Welson* v. *Neujan Bldg. Corp.*, 264 N. Y. 303.)

On a motion for summary judgment the facts must be shown by affidavit or other proof "sufficient to entitle him to a trial of the issues." (Rules Civ. Prac. rule 113.) This the defendant has failed to do.

The counterclaim is, therefore, insufficient and plaintiff is entitled to partial summary judgment for the rent of January, 1938, but with interest only from February 1, 1938, inasmuch as the lease does not provide for the payment of the rent "in advance." (*Smathers* v. *Standard Oil Co.*, 199 App. Div. 368; affd., 233 N. Y. 617.)