RIGGER ET UX. *v.* BALTIMORE COUNTY,
MARYLAND ET AL.

[No. 291, September Term, 1972.]

*Decided June 8, 1973.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Eugene A. Alexander, III,* with whom were *Thomas E. Rosser* and *Charles H. Reed, Jr.,* on the brief, for appellants.

*W. Lee Harrison* and *Avrum M. Kowalsky,* with whom was *T. Carroll Brown* on the brief, for appellees.

LEVINE, J., delivered the opinion of the Court.

This case arises from an action for declaratory judgment brought by appellees, Baltimore County (the county) and the Maryland American General Group (Maryland General). After the Circuit Court for Harford County (Dyer, J.) ruled in their favor against appellants, Ira C. Rigger and Elizabeth R. Rigger (the Riggers), this appeal resulted.

The dispute centers on a lease entered into by the Riggers and the county on November 10, 1960. Under that agreement, the Riggers were to construct a one-story building on York Road in Cockeysville for use as a public library for a term of ten years. Contained in the lease were the following provisions:

\* \* \*

"6. The Tenant shall and will save and keep harmless and indemnify the Landlord from and against any and all claims for damages whatsoever, of any kind or nature, including personal injuries, arising in any manner or under any circumstances through the exercise by the Tenant of any right granted or conferred hereby, *whether such damage,* including personal injury, *be sustained by the Tenant* or its officers, agents, employees or invitees *or by other persons* or corporations which seek to hold the Landlord liable;

\* \* \*

"10. The Landlord agrees to be responsible for and bear the expense of repairs or maintenance of:

"a. Roof and walls (maintain in a water tight condition)

"b. Septic system

"c. Exterior painting

"d. *paving and sidewalks* (emphasis added)

"The Tenant shall after ten (10) days written notice to the Landlord perform such maintenance or repair items listed above that are detrimental to the safe condition of the premises and the cost of said maintenance or repairs shall be deducted from the rent due by the Tenant under this lease."

In 1964, the General Assembly of Maryland enacted Chapter 124 which added a new § 40 to Maryland Code (1957) Art. 53.[1] It became effective on June 1 of that year and provided:

"Any provision of a lease or other rental agreement relating to real property whereby a lessee or tenant enters into a covenant, agreement or contract, by the use of any words whatsoever, the effect of which is to indemnify the lessor or landlord or hold the lessor or landlord harmless, or preclude or exonerate the lessor or landlord from any or all liability to the lessee or tenant, or to any other person, for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord on or about the leased or rented premises or on or about any elevators, stairways, hallways or other appurtenances used in connection therewith, and not within the exclusive control of the lessee or tenant, *shall be deemed to be against public policy and void.*" (emphasis added).

On November 17, 1965, one Margaret M. Mayer sustained personal injuries when she fell upon a walkway outside the library. Alleging that her injuries were due to the defective

---

**1.** At its 1972 session, the General Assembly repealed § 40 and, with one addition, reenacted it in substantially the same form, as Code (1957, 1973 Repl. Vol.) Art. 21, § 8-211. As so modified, it became effective on January 1, 1973.

and unsafe condition of the walkway, Mrs. Mayer and her husband filed an action for damages on November 14, 1966 in the Circuit Court for Baltimore County against the Riggers, the county, and the county's Board of Library Trustees. The county and the board were subsequently let out of the case on the ground of governmental immunity.

Although the events which transpired in that case are not entirely clear, principally because the court papers in that litigation were not included in the record of this case, this much is apparent. At the time of the injury, there was in effect a policy of public liability insurance which Maryland General had issued to the county. The Riggers insisted that Maryland General, in addition to being required to provide a defense on behalf of the county, was also obliged to satisfy any judgment obtained by the Mayers against the Riggers by virtue of paragraph 6 of the lease — the indemnification or exculpatory clause. The dispute was temporarily solved by a "Non-Waiver Agreement" executed by the Riggers on August 14, 1967. Pursuant to that agreement, counsel employed and paid by Maryland General entered his appearance for the Riggers.

On December 23, 1968, the Mayer case was settled at the "trial table" for the sum of $10,000, which was paid by Maryland General with the approval of the Riggers' attorney. It appears that the Mayer settlement was handled in that fashion with a view towards a further judicial determination of who should bear ultimate responsibility — as between the parties to the lease — for the payment of the $10,000. With that purpose in mind, appellees filed this suit. In the judgment from which this appeal is taken, Judge Dyer declared that appellees are "entitled to recover from the [Riggers] the sum paid by [them] in settlement" of the Mayer claim.

Although appellants urge upon us several grounds for reversal, we deem it necessary to consider only their contention that the statute — having been enacted in 1964 — cannot be retrospectively applied to the lease which was executed in 1960. Hence, appellants say, the trial judge erred in holding that the statute operates so as to preclude them

from seeking indemnification under paragraph 6 of the lease.

It is well established that retrospective operation of a statute is not favored, *State Farm v. Hearn, Adm'x*, 242 Md. 575, 219 A. 2d 820 (1966); *Bell v. State*, 236 Md. 356, 204 A. 2d 54 (1964); *Gutman v. Safe Deposit & Trust Co.*, 198 Md. 39, 81 A. 2d 207 (1951); 2 Sutherland, *Statutory Construction*, § 2201 (3rd ed. 1943); and there is a general presumption that all statutes, state and federal, are intended to operate prospectively.[2] This presumption is rebutted only by a clear expression to the contrary in the statute, *Unsatisfied Fund v. Bowman*, 249 Md. 705, 241 A. 2d 714 (1968); *State Farm v. Hearn, Adm'x*, and *Bell v. State*, both *supra; cf. Blocher v. Harlow*, 268 Md. 571, 303 A. 2d 395 (1973). In *Gutman v. Safe Deposit & Trust Co., supra*, quoting from *Hemsley v. Hollingsworth*, 119 Md. 431, 87 A. 506 (1913), this Court said:

> " 'It is well settled that a statute will not be given a retrospective operation, unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified.' " 198 Md. at 43.

No prior decision of this Court appears to have considered the question presented here under similar or analogous factual circumstances. There are cases decided elsewhere, however, that have dealt with the issue on virtually identical facts, and they are supportive of appellants' contention, *Weiler v. Dry Dock Sav. Inst.*, 258 App. Div. 581, 17 N.Y.S.2d 192, *aff'd mem.*, 284 N. Y. 630, 29 N.E.2d 938 (1940); *Bernard Katz, Inc. v. East Thirtieth Street Corp.*, 172 Misc. 873, 16 N.Y.S.2d 640 (1939), *aff'd mem.*, 259 App. Div. 707, 19 N.Y.S.2d 145 (1940). *Cf. Whitmire v. H.K. Ferguson Co.*, 261 Cal. App. 2d 594, 68 Cal. Rptr. 78 (1968); *Booth v. Cebula*, 25

2. For a thorough discussion of the various rules formulated by the courts in determining whether a statute should be applied retrospectively or prospectively, see Judge Hammond's opinion, for the Court, in Janda v. General Motors, 237 Md. 161, 168-169, 205 A. 2d 228 (1964).

Ill. App. 2d 411, 166 N.E.2d 618 (1960); *Hanfeld v. A. Broido, Inc.,* 167 Misc. 85, 3 N.Y.S.2d 463 (1938).

In *Weiler v. Dry Dock Sav. Inst., supra,* a lease containing an exculpatory clause was entered into on March 23, 1937. On June 5 of that year, a New York statute, declaring such provisions "to be void as against public policy and wholly unenforceable," became effective. On July 27, 1937 — fifty-two days later — the tenant sustained property damage because of the owner's negligence. The New York court noted the absence of any language in the statute indicating a legislative intent to embrace leases executed prior to the effective date of the statute; and thus expressly held that the latter applied "only to contracts made on that date or thereafter."

Manifestly, § 40 contains no clear expression of an intent to apply it retrospectively, *Unsatisfied Fund v. Bowman; State Farm v. Hearn, Adm'x; Bell v. State; Gutman v. Safe Deposit & Trust Co.,* all *supra.* As the New York and Illinois cases strongly suggest, a retroactive application of the statute to the lease might well raise serious constitutional questions. Furthermore, *Weiler, supra,* lays to rest any notion that because the injury was sustained after the effective date of § 40, the latter is being invoked prospectively rather than retrospectively. The determinative event in this context is the execution of the lease, and not the happening of the accident.

It is important to observe that, as in New York and Illinois, prior to the enactment of the statute in Maryland, exculpatory clauses were not deemed contrary to the public policy of this state. We so held, following the great weight of authority, in *Eastern Ave. Corp. v. Hughes,* 228 Md. 477, 180 A. 2d 486 (1962). In view of our holding that § 40 is inapplicable to the lease in this case, that decision is controlling.

In an effort to overcome the possible impact of the exculpatory clause, appellees maintain that the Riggers are, in any event, liable for the Mayer damages in view of their covenant "to be responsible for and bear the expense of repairs or maintenance of . . . [the] paving and sidewalks"

found in paragraph 10 of the lease. Quoting from a number of dictionaries, they argue that this "means ... the Appellants are legally and morally answerable for the discharge of their duties"; and that to nullify appellants' obligations under paragraph 10 by applying the exculpatory clause "would be to inflict self contradiction on the Lease document unnecessarily." We do not agree.

Whatever might have been the liability of appellants under the covenant to repair and maintain in the absence of the exculpatory clause, appellees' argument plainly overlooks our many prior decisions holding that the intention of the parties must be garnered from the terms of the contract as a whole, and not from the clauses considered separately, *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 329, 301 A. 2d 12 (1973); *Perper v. Fayed*, 247 Md. 639, 234 A. 2d 144 (1967); *Wheaton Lanes v. Rinaldi*, 236 Md. 525, 204 A. 2d 537 (1964); *Sagner v. Glenangus Farms*, 234 Md. 156, 198 A. 2d 277 (1964). In keeping with that principle, paragraphs 6 and 10 must be read together. The result is that the exculpatory clause limits paragraph 10 so as to merely require the landlords to perform repairs and maintenance to the designated portions of the demised premises; and, in the alternative, it authorizes the tenant to do so at the landlords' expense. Suffice it to say that with the exculpatory clause being fully effectual, the meaning ascribed by appellees to paragraph 10 has no support.

In sum, we conclude that § 40 does not invalidate the exculpatory clause of the lease; therefore appellees are not entitled to recover from appellants the amount paid in settlement of the personal injury claim. An appropriate declaratory judgment to that effect should be entered upon remand.

> *Reversed and remanded for entry of a declaratory judgment conformable to the views expressed herein; appellees to pay costs.*