855 A.2d 364

**STATE ETHICS COMMISSION**

v.

**Gerard E. EVANS.**

**No. 125, Sept. Term, 2003.**

Court of Appeals of Maryland.

July 30, 2004.

Stephen H. Sachs (Wilmer, Cutler & Pickering, Avery Aisenstark, Avery Aisenstark, LLC, Robert A. Hahn, Jill B. Martin, State Ethics Commission of Annapolis, Donna Hill Staton, Deputy Atty. Gen., on brief), for appellant.

Daniel M. Clements (Rochel Z. Schnur, Salsbury, Clements, Bekman, Marder & Adkins, LLC, Baltimore, on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

WILNER, J.

Maryland Code, §§ 15–701(a) and 15–703(a) of the State Government Article (SG) (2003 Supp.) require a lobbyist to file with the State Ethics Commission a registration statement for each client that has employed the lobbyist. Failure to file a required registration statement subjects the lobbyist to criminal sanctions. SG § 15–903.

SG § 15–405(e) permits the Commission to revoke a registration if the Commission determines that, based on acts arising from lobbying activities, the lobbyist has been convicted of bribery, theft, or other crime involving moral turpitude. A complaint charging such a conviction must be initiated within two years after the date the conviction becomes final. Section 15–405(e) was enacted in 2001 and took effect November 1, 2001. Prior to then, there was no express authority in the law for the Commission to suspend or revoke a registration and no statement of grounds upon which a registration could properly be suspended or revoked.

On July 14, 2000, appellee, Gerard Evans, a registered lobbyist, was convicted in U.S. District Court on nine counts of wire and mail fraud arising out of his lobbying activities. On September 29, 2000, he was sentenced to 30 months imprisonment, fined, and required to pay restitution by reason of those convictions. As no appeal was taken, the conviction became final that day, some 13 months before § 15–405 took effect.

On May 24, 2002, Evans, having served his prison sentence, registered with the Commission as a lobbyist on behalf of five clients. On July 10, 2002, the Commission initiated a complaint against Evans based on his conviction, and on October 8, 2002, the Commission, acting under SG § 15–405(e), revoked the registrations. On Evans's petition for judicial review, the Circuit Court for Anne Arundel County reversed the Commission's decision on the ground that it constituted an impermissible retroactive application of § 15–405(e). The issue before us, in this appeal by the Commission, is whether the Circuit Court was correct. We shall hold that it was.

## BACKGROUND

In 1979, the General Assembly enacted a fairly comprehensive Public Ethics Law for State and local government officials and employees. *See* 1979 Md. Laws, ch. 513. The law, subsequently codified in Maryland Code, title 15 of the State Government Article, prohibited certain conflicts of interest on the part of State officials and employees (subtitle 5), required

the annual disclosure by State public officials of certain gifts, outside employment, and financial and property interests (subtitle 6), required lobbyists, as the term was defined, to register and file certain reports (subtitle 7), created a State Ethics Commission to administer the law (subtitles 2, 3, and 4), required the local governments to adopt comparable ordinances with respect to their officials and employees (subtitle 8), and provided for certain enforcement mechanisms (subtitle 9).

With three exceptions added over the years, prohibiting lobbyists from accepting compensation contingent on the outcome of legislative or executive action (SG § 15–706), from engaging in certain activity relating to campaign contributions (SG § 15–707), and from making gifts to public officials or employees that the lobbyist knew the officials or employees were prohibited from accepting (§ 15–505(a)(2)), the law governing lobbyists was essentially restricted to requiring them to register with the State Ethics Commission and to file semiannual reports. Although lobbyists were, of course subject to the criminal laws against bribery, fraud, and extortion, there were, subject to the noted exceptions, no more specific ethical standards set forth in the Public Ethics Law governing what they could or could not do. Nor was there any provision authorizing the Commission to suspend or revoke a registration or to impose any meaningful administrative sanction if inappropriate conduct was discovered. If the Commission found a violation of the law, it could issue an order to cease and desist the violation and seek judicial enforcement of that order or it could issue a reprimand. A court, in an enforcement action, could fine the violator.

The lack of clear ethical standards and effective administrative enforcement came dramatically to public attention when two prominent lobbyists who practiced before the General Assembly, the second being appellee, were indicted for, and ultimately convicted in U.S. District Court of, mail fraud based on conduct directly or indirectly associated with their lobbying activities. The essence of the nine wire and mail fraud charges of which Evans was convicted was that he had in-

duced a member of the House of Delegates to commence the process for introducing legislation that would be detrimental to the economic interests of certain paint manufacturers, that he then, with some embellishment, presented that prospect to those manufacturers, falsely informing them that the Mayor of Baltimore intended to support that legislation, and that, through those false representations, he induced those companies to employ him as a lobbyist for the purpose of defeating the legislation. The parties inform us that "[s]chemes of this sort, premised on phony or outright phantom legislation, are colloquially known as 'bell ringing.'"

Even before the Evans indictment in December, 1999, the Legislature, in its January–April, 1999 Session, created a Study Commission on Lobbyist Ethics and charged it, among other things, with collecting information about lobbying practices, formulating a Code of Ethics for lobbyists, proposing legislation, and reporting its findings to the Governor and General Assembly. The Study Commission was to make its report by December, 1999, but, at its request, that deadline was extended to November, 2000.

In its Report, the Study Commission declined the invitation to formulate a Code of Ethics for lobbyists but recommended instead a number of statutory changes designed to prohibit certain specific practices and provide greater regulation of lobbying activities and more effective enforcement of the regulatory requirements. Among the recommendations were (1) expanding the scope of activities that would require registration, (2) prohibiting certain conduct on the part of lobbyists, (3) authorizing the State Ethics Commission to impose administrative fines and to suspend or revoke a lobbyist's registration for certain ethical violations, and (4) strengthening available criminal sanctions by lengthening from one year to two years the statute of limitations for prosecution of criminal violations and increasing maximum fines.

A bill embodying those recommendations was introduced and enacted in the 2001 Session of the General Assembly. *See* 2001 Md. Laws, ch. 631. Among other things, the bill created

a new SG § 15–713 that listed 14 prohibited acts, one of which was "commit[ting] a criminal offense arising from lobbying activity." In SG § 15–405, dealing with the enforcement powers of the State Ethics Commission, the bill added the new suspension and revocation of registration provisions noted above. Section 15–405(e)(1) provides:

"If the Ethics Commission determines it necessary to protect the public interest and the integrity of the governmental process, the Ethics Commission may issue an order to:

(i) suspend the registration of an individual regulated lobbyist if the Ethics Commission determines that the individual regulated lobbyist:

1. has knowingly and willfully violated Subtitle 7 of this title; or

2. has been convicted of a criminal offense arising from lobbying activities; or

(ii) revoke the registration of an individual regulated lobbyist if the Ethics Commission determines that, based on acts arising from lobbying activities, the individual regulated lobbyist has been convicted of bribery, theft, or other crime involving moral turpitude."

Section 15–405(e)(3) provides that, if the Commission revokes a registration, the lobbyist may not engage in lobbying for compensation. Section 15–405(e)(4) requires that any complaint by the Ethics Commission based on a violation of § 15–405(e)(1) must be initiated within two years after (1) the Commission's knowledge of the violation, or (2) the date the conviction becomes final.

Section 4 of Ch. 631 provided that the Act would take effect November 1, 2001. The Act said nothing, one way or the other, about whether any of the sanctions it included could be applied to or based on conduct that occurred before its effective date.

As noted, Evans's conviction became final on September 29, 2000. On May 24, 2002, following his release from prison but still while on supervised release, he filed lobbying registration forms with the Ethics Commission on behalf of five clients.

There does not appear to be any provision in the law authorizing the Commission to reject a registration upon its filing, but only, upon a complaint and after a hearing, to suspend or revoke an already-filed registration pursuant to SG § 15–405(e). On July 10, 2002, the Commission filed with itself and served on Evans a Complaint against Evans, averring his conviction of a crime of moral turpitude and that the revocation of his lobbyist registrations was necessary to protect the public interest and the integrity of the governmental process. Accompanying the Complaint was a proposed interim Order for Summary Suspension that had previously been prepared by the Commission's Staff and a notice of hearing set for August 15, 2002.[1]

Evans responded with a motion to dismiss the Complaint on the ground that the Commission had no jurisdiction over the actions of any lobbyist that occurred prior to the November 1, 2001, effective date of the law. The motion was not a model of clarity, but its essence was that application of SG § 15–405(e) to Evans would constitute an impermissible retroactive application of the law, and, indeed, an *ex post facto* law, in part because the Commission's new enforcement authority was somehow tied to the enhanced criminal sanctions, in part because the new regulations were substantive rather than procedural in nature, and in part because application of the law to Evans would make it an impermissible "special law," in violation of Article III, § 33 of the Maryland Constitution.[2]

---

1. The Commission grounded its authority to summarily suspend the registrations on SG § 10–226(c)(2). That statute, which is part of the contested case provisions of the Administrative Procedure Act, allows a State agency subject to those provisions to order summarily the suspension of a "license" if the agency (1) finds that the public health, safety, or welfare imperatively requires emergency action, and (2) promptly gives the licensee written notice of the suspension, the finding, the reasons that support the finding, and an opportunity to be heard.

2. At the hearing on the Commission's proposed summary suspension, Evans disavowed any argument that § 15–405(e) constituted an *ex post facto* law. He continued to maintain that the criminal sanctions could not be Constitutionally applied retroactively but conceded that the Legislature could, if it had chosen to do so, have made § 15–405(e)

The "special law" argument was based on the assertion, which the Commission disputed, that Evans was the only person in the world who had been convicted of a predicate crime within two years prior to the effective date of the statute.

At a hearing on the proposed summary suspension order, the Commission Staff contended that § 15–405(e) was not being applied retroactively, but even if it was, such an application was permissible. The authority to revoke a registration, it claimed, was both procedural and remedial; it was implicit in the former statute and the Legislature undoubtedly intended for the new provisions to be available with respect to any complaint made within the two-year window from the date of final conviction. The Staff denied that § 15–405(e) constituted an *ex post facto* law, in that it was not punitive in nature but was for the public protection. Evans pursued his argument that the Commission was attempting to apply § 15–405(e) retroactively and that it could not do so. At the conclusion of the hearing, the Commission determined that the jurisdictional question needed additional consideration. It denied the request for summary suspension, denied the motion to dismiss with leave to resubmit it, and set the matter for further hearing on both the jurisdictional issue and, if necessary, the merits.

In advance of that hearing, the parties stipulated, among other things, that Evans had been convicted of crimes that this Court had interpreted as being crimes of moral turpitude and that the convictions arose from Evans's lobbying activities. Evans resubmitted his motion to dismiss the complaint. The Commission understood the principal issue to be whether it could suspend or revoke the lobbying registrations based on convictions occurring before § 15–405(e) took effect.[3]

---

retroactive. His point before the Commission, and his point in this Court, is that it did not, in fact, do so.

3. Evans also pressed two alternative arguments—that, if retroactively applied, § 15–405(e) constitutes an impermissible "special law" under Art. III, § 33 of the Maryland Constitution and that, because the Commission knew of his violations more than two years prior to filing

On October 8, 2002, the Commission entered a Final Order in which it rejected each of Evans's arguments and revoked his registrations. With respect to retroactivity, the Commission concluded that its use of § 15–405(e) was, in fact, a prospective, forward-looking application of the statute, in that it affected only registrations filed after November 1, 2001. It declared that a statute does not operate retroactively merely because it is applied to conduct that occurred before its enactment, unless it interferes with vested rights. When Evans was convicted of a crime of moral turpitude in September, 2000, the Commission said, he had no vested right in a lobbying registration. In part, the Commission relied on the language in § 15–405(e)(1)(ii) permitting revocation where the registrant "has been convicted." The Commission regarded that language as use of the past tense which, with no qualifying language, indicated an intent that past convictions may be the basis for revocation. Thus, the Commission concluded:

"We must presume that the General Assembly's choice of wording is not meaningless and to give full effect to the plain language of the statute, we must conclude that the legislature intended to include convictions that occurred prior to the effective date of the amendment."

The Commission rejected the "special law" argument on the ground that there was nothing "special" about the law—it applied to anyone who had been, or will in the future be, convicted of a predicate crime within two years prior to the filing of a complaint. The limitations argument hinged on the wording of § 15–405(e)(4), requiring that the complaint be initiated within two years of (1) the Commission's knowledge of the violation or (2) the date the conviction becomes final. Evans regarded that provision as establishing alternative periods of limitation and urged that the Commission was subject to the shorter of the two. The Commission, he said, was aware of his violations from media coverage of the events

---

its complaint (notwithstanding that the complaint was filed within two years after the convictions became final), the complaint was barred by limitations.

leading to his indictment and had no more than two years from then to file its complaint. The Commission responded that, as Evans was presumed innocent of the charges until convicted by the jury, the Commission could not assume the violations until that time.

Although the Circuit Court, on judicial review of the Commission's order, found no merit in Evans's argument that the application of § 15–405(e) to him made that statute an impermissible "special law" or that the Commission's complaint was barred by limitations, it concluded that revocation of the registrations based on the pre-enactment convictions constituted an impermissible retroactive application of the law. The court acknowledged that retroactive application is not inherently forbidden, provided that such application does not interfere with vested rights, but the court noted that statutes are presumed to be applied prospectively only, and "[i]n order to give retroactive effect to a statute, an intent to do so must be clearly expressed...." The court found no clear expression, either in the statute or its legislative history, of an intent by the General Assembly that § 15–405(e) be applied to convictions that occurred prior to November 1, 2001. The Legislature was keenly aware, it said, of Mr. Evans's conviction, and, had it desired to permit the Commission to preclude him, or others who might have been or might yet be convicted prior to the effective date of the statute, from continuing to lobby, it could have made that intent clear.

Aggrieved, the Commission appealed, arguing that § 15–405(e) was not being applied retroactively and that, in any event, the Legislature intended for it to apply to Evans. The issue was joined as well with respect to Evans's continued assertion that application of § 15–405(e) to his 2000 convictions would make the statute an impermissible "special law" and that the Commission's complaint was not timely. We granted *certiorari* on our own initiative prior to proceedings in the Court of Special Appeals. Because we agree with the Circuit Court's conclusion as to the retroactive application of § 15–405(e), we need not address the "special law" and limitations issues raised by Evans.

## DISCUSSION

■ The issue before us is not whether, as a matter of public policy, a person who has engaged in the conduct Evans was convicted of committing should be permitted to continue to act as a compensated lobbyist. Nor, in our view, is the issue whether the Legislature had the Constitutional authority to draft the statute in such a way that would have allowed the Commission to preclude Evans from continuing to act as a compensated lobbyist based on his September, 2000 convictions. Indeed, Evans no longer contests, if he ever did, that the Legislature could have achieved that result. The only question is whether the record reveals a sufficiently clear intent by the Legislature that the statute have that effect or that it be applied in that manner.

We have articulated the rules governing the application of a statute to events that occurred prior to the effective date of the statute on a number of occasions, most recently in *Allstate v. Kim,* 376 Md. 276, 829 A.2d 611 (2003). We made three basic points in *Kim.* First, citing *WSSC v. Riverdale Heights Fire Co.,* 308 Md. 556, 563–64, 520 A.2d 1319, 1323 (1987), we re-confirmed four basic principles:

"(1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws."

The second point iterated in *Kim* was that, in applying those principles when an issue is raised regarding whether a statute may be given retroactive effect, we engage in a two-part analysis:

"First, we must determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted. That implicates the first and third principles.

Applying the presumption of prospectivity, a statute will be found to operate retroactively only when the Legislature 'clearly expresses an intent that the statute apply retroactively.' *Waters v. Montgomery County,* 337 Md. 15, 28, 650 A.2d 712, 718 [ (1994) ]."

\*     \*     \*

"If we conclude that the Legislature *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition. That implicates the second and fourth principles."

*Allstate v. Kim,* 376 Md. at 289–90, 829 A.2d at 618–19.

The third point made in *Kim* is that the issue of intent often depends on context. We pointed out:

"The issue of intent sometimes becomes clouded when, as here, a statute can be regarded as being prospective in one sense and retroactive in another. As noted in *State Comm'n on Human Rel. v. Amecom Div.,* 278 Md. 120, 123, 360 A.2d 1, 3–4 (1976), 'a statute, though applied only in legal proceedings subsequent to its effective date and in that sense, at least, prospective, is, when applied so as to determine the legal significance of acts or events that occurred prior to its effective date, applied retroactively.' Context becomes important."

*Id.* at 289, 829 A.2d at 618–19.

As in *Kim,* § 15–405(e) was applied prospectively here in the sense that the registrations were filed and revoked after the effective date of the statute. The statute was clearly applied retroactively, however, in that the sole ground for revocation was an act—a conviction—that occurred prior to the effective date. The statute, in that sense, was applied in a way that "determine[d] the legal significance of acts or events that occurred prior to its effective date." As we have indicated, Evans does not contest that the Legislature could validly had achieved such a result, and, indeed, the relevant case law confirms that view. *See De Veau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (1953 law prohibiting a

person who had been convicted of felony from soliciting or collecting union dues on the New York waterfront could constitutionally be applied to prohibit a person who had been convicted in 1920 from collecting dues; "[b]arring convicted felons from certain employments is a familiar legislative device to insure against corruption in specified, vital areas"); *Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (same effect, cited in *De Veau* ); *Smith v. Doe,* 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (citing *De Veau* and *Hawker* in support of holding that application of Alaska sex offender registration law to a person convicted prior to effective date of law did not make the law an *ex post facto* one); *Forti v. New York State Ethics Commission,* 75 N.Y.2d 596, 555 N.Y.S.2d 235, 554 N.E.2d 876 (1990).

Addressing the issue of intent in its initial brief, the Commission recognized the presumption against retroactive application, but, based on the fact that both the Study Commission created in 1999 and the Legislature itself were keenly aware of Evans's criminal conduct, urges that "[i]t is simply impossible to believe that the General Assembly, which commissioned and relied on the Study Commission's Final Report—a Report that stressed the need to restore public confidence in the wake of recent scandals—somehow intended to exempt the very person whose conduct, perhaps more than any other's, spawned this legislation." The Commission's point is that "[a]gainst this background, if the General Assembly had intended to exempt or give 'grandfather' status to Evans' conviction, it would have said so expressly."

The problem with this assertion is that it reverses the long-standing presumption against retroactivity. In *Kim,* we said that, in applying that presumption, "a statute will be found to operate retroactively *only when the Legislature 'clearly expresses an intent that the statute apply retroactively.' "* *Kim, supra,* 376 Md. at 289, 829 A.2d at 618, quoting in part from *Waters v. Montgomery County, supra,* 337 Md. at 28, 650 A.2d at 718. (Emphasis added). In other cases, we have used even stronger language. *See,* for example, *Williams v. Johnson,* 30 Md. 500, 508 (1869) ("A statute ought not to have a retroactive

operation, unless its words are so clear, strong and imperative, that no other meaning can be annexed to them, or unless the intention of the Legislature could not be otherwise satisfied"); *Dashiell v. Holland Maide Candy Shops*, 171 Md. 72, 188 A. 29 (1936) (confirming *Williams* and noting "statutes are not to be given a retroactive effect unless their words require it"); *Langston v. Riffe*, 359 Md. 396, 406, 754 A.2d 389, 394 (2000) (citing and confirming *Dashiell* ).

The fact that Evans's conduct may have helped spawn the legislative action that led to the enactment of § 15–405(e) does not mean that the Legislature intended for the Commission to be able to use conduct occurring before its effective date to revoke new registrations. It is not uncommon for a legislative body to address a problem, even a serious one, prospectively, understanding that the statute it enacts to deal with the problem may not immediately apply to those who caused the problem. The Legislature is aware—acutely aware in light of some of our recent cases dealing with retroactive legislation—of the rules regarding that issue. The fact that the Legislature did not act affirmatively to *exclude* Evans or others in his situation does not suffice to overcome the presumption against retroactivity. If the Legislature wanted the statute to apply to Evans or persons in his status, it would have to have taken some affirmative action, expressly or by necessary implication, to make that clear, and there is nothing that we can find in either the statute itself or its legislative history to indicate that it did so. The fact that the Legislature was, indeed, aware of Evans's conduct makes the omission particularly telling. Failure to expressly *exclude* Evans does not translate to an affirmative intent to *include* him.[4]

---

4. Both sides note an advice letter from an Assistant Attorney General to a member of the Legislature addressing the point at issue here—whether the disciplinary provisions of the 2001 statute could be applied to a lobbyist who was convicted of a crime prior to the effective date of the statute—and concluding that the statute "would not apply to permit the suspension or revocation of the lobbyist's registration." Although we happen to agree with that conclusion, the letter has no significance of its own. For one thing, it is an informal advice letter from an Assistant Attorney General, not a formal opinion of the Attorney Gener-

In its Final Order, the Commission interpreted the language permitting suspension or revocation if the lobbyist "has been convicted" as itself indicative of an intent to permit those sanctions for convictions that occurred before the effective date of the statute, construing the language as being in the past, rather than the present, tense, and it iterates that view in its reply brief as an additional basis for finding an intent to make the statute retroactive. We find no merit in that argument. For one thing, although this case will not be decided on the basis of the precise and often arcane rules of English grammar, we do question whether "has been convicted" constitutes the past tense of the verb "convict" as the Commission posits. It seems more to be the present tense, passive voice, possibly perfect form of the verb indicating merely a current status. Whatever may be the grammatical pigeonhole, however, use of that language suggests nothing as to whether the Legislature intended the sanction to apply to conduct occurring prior to the effective date of the statute. That language is also appropriate to an entirely prospective application of the statute, allowing suspension or revocation of a registration of anyone who "has been convicted" after the statute took effect and within two years prior to the initiation of the complaint.

Finally, although, as noted, the Legislature could have drafted the statute to preclude a person who had ever been convicted of serious crime from thereafter engaging in lobbying for compensation, the Commission's view that the statute as drafted was intended to have retroactive effect raises a much broader issue. SG § 17–113, added by the 2001 law, prohibits certain conduct on part of a lobbyist that was not previously prohibited, at least not expressly so. If the Commission's belief that the Legislature intended the statute, as written, to have retroactive effect is correct, under § 15–405(e), the Commission could suspend a registration for any of

---

al. More important, it was sent in June, 2002, long after enactment of the statute, and therefore could have had no impact on the legislative deliberations or be in any way indicative of legislative intent.

that conduct committed prior to the effective date of the law, at a time when it was not unlawful, and make that suspension effective for up to three years. Under § 15–405(e)(4), the Commission could take that action any time within two years after it gained knowledge of the conduct, which could be many years after the conduct occurred. Constitutionality aside, there is no basis for believing that the Legislature could have had any such intent.

The dissent agrees that, on the record before us, there is no evidence, or at least insufficient evidence, that the Legislature intended for § 15–405(e) to be applied retroactively, and it thus rejects, as do we, the Commission's argument to the contrary. On that issue, the Court is unanimous, and, apart from whether a retroactive application would or would not impair any vested rights of Evans, that alone would preclude giving the statute a retroactive application.

■ The dissent skirts that problem, which we regard as the determinative factor, by expressing the belief that termination of Evans's registration based on a conviction that occurred prior to the effective date of the statute does not constitute a retroactive application of the law. It rests that belief solely on the view that the Commission's action did not impair any vested right of Evans or change "the legal significance of completed transactions."

There are two problems with that proposition. First, assuming that the dissent's view that a criminal conviction is the equivalent of a "completed transaction" is correct, we are hard-pressed to understand how § 15–405(e) which, for the first time, permitted the State Ethics Commission to revoke a lobbyist's registration solely on the ground that the lobbyist has been convicted of certain criminal offenses, does not change the legal significance of a conviction that occurred prior to the effective date of the statute. Would the dissent also hold, under that view, that the Commission could suspend a registration for conduct, not then unlawful, that occurred prior to November 1, 2001?

To the extent that the dissent would define retroactivity in terms of whether a statute impairs vested rights, it conflates the concept of retroactivity with Constitutionally impermissible retroactivity and, as a logical consequence, would effectively prohibit any retroactive legislation. Under that view, a statute is retroactive if it impairs vested rights, but to the extent it impairs vested rights, it cannot be given retroactive effect—a classic "Catch–22." A statute may have retroactive effect without impairing a vested right. In *St. Comm'n on Human Rel. v. Amecom Div.*, 278 Md. 120, 123, 360 A.2d 1, 3 (1976), we defined a retroactive statute as one "which purports to determine the legal significance of acts or events that have occurred prior to the statute's effective date," and we made clear that there is "no absolute prohibition against retroactive application of a statute."

■■■■ A statute may affect dealings, contracts, or statuses that existed prior to the effective date of the statute, and, to the extent that it does so, it will be regarded as retroactive. Under clear and well-established Maryland case law, there are but two brakes or caveats on permitting statutes to have that effect: first, because there is a presumption that statutes apply only prospectively, there must be clear evidence, legally sufficient to rebut that presumption, that the legislature intended for the statute to apply retroactively; and second, even if such intent is adequately established, a statute will not be permitted to so apply if such an application would impair a vested right. The second brake is a Constitutional impediment, not a definitional element. It does not make the statute retroactive—that is accomplished by rules of statutory construction in aid of establishing legislative intent—but rather precludes the statute from applying retroactively, even though that was the legislative intent. If there is sufficient evidence of the requisite legislative intent and a retroactive application would not impair vested rights, the statute may be given retroactive effect. The problem in this case is that there was insufficient evidence of legislative intent that § 15–405(e) apply with respect to convictions that occurred prior to its effective date, a deficiency recognized by the dissent.

Because we find in this record no clear expression of an intent by the General Assembly to permit the revocation of a registration based on conduct that occurred before the effective date of the statute, it is not necessary for us to address the other issues raised by Evans.

JUDGMENT OF CIRCUIT COURT AFFIRMED, WITH COSTS.

CATHELL and HARRELL, JJ., Dissent.

Dissenting Opinion by HARRELL, J., which CATHELL, J., joins.

Were it necessary in this case to resolve the arguments directed to retroactivity,[5] I would agree with the Majority that, on this record, the Legislature failed to express sufficiently and clearly an intent for the statutory amendments in question to have retrospective effect. Maj. op. at 384. I would agree also that the outcome in this case should not turn on the tense of the use in § 15–405(e)(1)(ii) of the verb "has been convicted." Maj. op. at 385. In my view, however, neither of these matters need be resolved here inasmuch as the application to Evans' lobbyist registration of § 15–405(e) by the State Ethics Commission was not retroactive in effect. The Commission's action neither impaired vested rights nor changed the legal consequences of completed transactions, as those criteria are understood in the accepted analysis of what constitutes the retrospective application of an enactment. Thus, neither the common law presumption against the retrospective application of legislation nor the question of legislative intent regarding retrospectivity are material to deciding this case. The application to Evans' situation of § 15–405(e) was entirely prospective and lawful. Accordingly, I would reverse the judgment of the Circuit Court for Anne Arundel County and remand this case with direction to affirm the State

---

5. The terms "retrospective" and "retroactive," and their derivations, are used interchangeably in this dissent.

Ethics Commission's decision to revoke Evans' lobbyist registration.

Our cases considering whether particular statutes lawfully may be applied retrospectively tend to focus on the search for clues whether the Legislature, having failed to include clear direction to that end in the enactment, nevertheless evinced an intent for the statute in question to be applicable retroactively. *See, e.g., Mason v. State,* 309 Md. 215, 217–18, 221–22, 522 A.2d 1344, 1346–47 (1987)(focusing on whether an amendment limiting a convict to three habeas petitions was intended to apply to a person who already had filed two habeas petitions before the new statute's effective date); *Roth v. Dimensions Health Corp.,* 332 Md. 627, 629–30, 632 A.2d 1170, 1171 (1993)(concluding that presumption against retroactive application of a statute does not apply where retroactive application of the statute would not impair previously vested rights); *Rigger v. Baltimore County,* 269 Md. 306, 311–12, 305 A.2d 128, 131–32 (1973)(holding that a statute prohibiting exculpatory clauses in residential lease agreements could not be applied to a pre-effective-date lease agreement, absent specific legislative intent, because it would interfere with vested contractual rights and perhaps raise serious constitutional questions); *Gutman v. Safe Deposit & Trust Co. of Baltimore,* 198 Md. 39, 41–42, 44, 81 A.2d 207, 208, 209 (1951)(holding that a statute abolishing the distinction between adopted and biological children could not apply to a pre-effective-date testamentary will, absent specific legislative intent, because to do so would interfere with vested rights under the will).  Our cases, for the most part, however, have not considered in any depth the definition of, or developed an analytical paradigm for determining in the first instance, what constitutes retroactive application of a statute.[6]  Accordingly, I look elsewhere.

---

**6.** For limited analyses of what constitutes retroactive application of a statute, *see Allstate Ins. Co. v. Kim,* 376 Md. 276, 289–90, 829 A.2d 611, 618, 619 (2003)(referring in passing to retroactive application of a statute as one that "determine[s] the legal significance of acts or events that occurred prior to its effective date"); *see also Langston v. Riffe,* 359 Md. 396, 406, 754 A.2d 389, 406 (2000)(describing retroactive acts as those which "operate on transactions which have occurred or rights and obligations which existed before passage of the act"); *see also State Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.* 278

The U.S. Supreme Court dealt fully with this question in *Landgraf v. USI Film Products*, 511 U.S. 244, 268–83, 114 S.Ct. 1483, 1498–508, 128 L.Ed.2d 229 (1994). While the Court eschewed a rigidly mechanical standard, it generally defined as a retrospective application of a statute one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1506. The Court emphasized that "a statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment." *Landgraf*, 511 U.S. at 269, 114 S.Ct. at 1499. Rather, a statute is deemed to have retroactive effect if it purports to change the legal consequences of events completed before its enactment, with the analysis to be guided by "fair notice, reasonable reliance, and settled expectations." *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499. The Court urged caution in this analysis, stating: "[e]ven uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards." *Landgraf*, 511 U.S. at 270 n. 24, 114 S.Ct at 1499 n. 24.

*Landgraf* dealt with the asserted imposition of civil tort liability (in the form of compensatory and punitive damages under the Civil Rights Act of 1991) for allegedly discriminatory conduct occurring prior to the effective date of the statute. *Landgraf*, 511 U.S. at 247, 114 S.Ct. at 1488. The plaintiff-

Md. 120, 123, 360 A.2d 1, 4 (1976)(implying that retroactive application of an anti-discrimination statute would mean applying the statute to acts of discrimination which occurred before the statutory effective date); *see also WSSC v. Riverdale Heights Vol. Fire Co.*, 308 Md. 556, 557–58, 562, 520 A.2d 1319, 1320, 1322 (1987)(stating that the plaintiff "necessarily" sought a retrospective application of a tort immunity statute because the case concerned the legal consequences of alleged conduct before the effective date of the statute).

employee's immediate supervisor failed to respond to her complaints of sexual harassment by a co-worker. *Landgraf,* 511 U.S. at 248, 114 S.Ct. at 1488. The plaintiff-employee allegedly suffered mental anguish because the situation was not corrected in a timely manner. *See Landgraf,* 511 U.S. at 247–48, 114 S.Ct. at 1488. While the defendant-employer would not have been liable under the previous statutory scheme, the Court assumed, *arguendo,* that application of the new statute to the past discrimination would support a finding of liability against the defendant-employer, along with a possible award of compensatory and punitive damages. *Landgraf,* 511 U.S. at 250, 114 S.Ct. at 1489. To hold the defendant-employer liable for past conduct under these circumstances would impair the employer's previously vested legal right not to be forced to pay compensatory and punitive damages for acts or omissions which were not illegal at the time they occurred.[7] *Landgraf,* 511 U.S. at 280–82, 114 S.Ct. at 1505–06. The Court found that to hold the defendant liable would have increased the employer's liability for past conduct. It observed that an award of compensatory damages is "quintessentially backward looking," and that introduction of a "right to compensatory damages" would "have an impact on private parties' planning." *Id.* In other words, had the cause of action existed at the time of the conduct, the employer might

---

7. A vested right may be defined as an interest which is proper for the state to recognize and protect, and of which the individual may not be deprived arbitrarily without injustice. As such, it includes an immediate right of present enjoyment or a present fixed right of future enjoyment which, under particular circumstances, will be protected from legislative interference. *Walter v. Gunter,* 367 Md. 386, 415, 788 A.2d 609, 626 (2002) (Harrell, J., Dissenting). In the context of *Landgraf,* the defendant-employer impliedly had a vested right not to be forced arbitrarily to pay monetary damages to another individual. The fact that the conduct in question was not illegal under the previous statutory scheme, and was completed before the law was changed, would have meant holding the defendant liable for damages based on past conduct for which the defendant could not have foreseen such liability. *See Landgraf,* 511 U.S. at 281, 114 S.Ct. at 1505–06. For an interpretation of *Landgraf* focusing on the analysis of impairment of vested rights, see *R.A.M. of South Florida, Inc. v. WCI Communities, Inc.* 869 So.2d 1210, 1218 (Fla.Dist.Ct.App.2004), *cert. granted, citation not available.*

have acted to terminate the harassment as a means to avoid civil liability. As such, the Court found that the proposed liability imposed new duties with respect to completed transactions. *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1489. To hold an employer civilly liable for conduct not actionable at the time that it occurred would attach a "new legal burden" to the original conduct, and would impose a "new disability" with respect to completed transactions. *Landgraf*, 511 U.S. at 283, 114 S.Ct. at 1506–07.

Although *Landgraf* dressed its reasoning in the finery of federal constitutional considerations, and the present case has not been so argued, the *Landgraf* methodology for determining what constitutes retrospective application of a statute is consistent with our cases. Several Maryland cases discussing the presumption against retroactivity nonetheless find the statutes in question to have retrospective sweep. Reading those cases in light of *Landgraf*, it is apparent that: 1) the proposed statutory application in question in each case would have been found to be retroactive under the *Landgraf* analysis also; and, in contrast, 2) § 15–405(e) is prospective in its application to Evans, which result would not conflict with the results or reasoning in those cases.

The cases discussing retroactivity relied on by the parties and the Majority involve, in the main, statutes that either interfered with vested rights or established new duties and legal burdens with respect to completed transactions. In *Amecom, Roth, Riverdale Heights, Rigger,* and *Gutman,* the relevant factual occurrences or transactions precipitating the application of the respective statutes were completed: the parties needed do nothing more after the effective date of the statute for the statute assertedly to apply to them. In *Amecom,* the retaliatory discharge occurred before the statute was enacted. 278 Md. at 122, 360 A.2d at 3. In *Roth,* the medical malpractice occurred, and the plaintiff missed the limitations period to file his claim, before the statute was passed. 332 Md. at 628–30, 632 A.2d at 1170–71. The tort in *Riverdale Heights* was committed before the statute granting tort immunity became law. 308 Md. at 557–58, 520 A.2d 1319–20.

In situations where the relevant conduct precipitating the application of the statute arguably was incomplete before the effective date of the statute, the statute was deemed to have retroactive impact because it would interfere with previously vested rights. In *Mason*, the statute limited the defendant's right to future habeas petitions by counting his previous petitions toward the new limit. 309 Md. at 220–21, 522 A.2d at 1346. In *Rigger*, application of a statute banning landlord exculpatory clauses in residential lease agreements was considered to have retroactive effect although the tenant suffered the relevant personal injury after the effective date of the statute. 269 Md. at 311, 305 A.2d at 131–32. We concluded there that the proposed statutory application necessarily would be retroactive because it would interfere with vested contractual rights and perhaps "raise serious constitutional questions." 269 Md. at 311, 305 A.2d at 131. We similarly resolved in *Gutman* that a 1947 statute abolishing the distinction between adopted and biological children would have retroactive effect if applied to cure an otherwise void residuary bequest under a will probated in 1923. 198 Md. at 41–42, 81 A.2d at 207–08. As in *Rigger*, we concluded in *Gutman* that such an application necessarily would be retroactive because it would disturb vested rights of other legatees under the will. *See Gutman*, 198 Md. at 44, 81 A.2d at 209.

The present case clearly is distinguishable from these cases. First, application of § 15–405(e) to Evans impairs no vested right. Evans had no vested right to registration to practice as a lobbyist in the State of Maryland. The practice of public professions, such as law, medicine, and, by analogy, lobbying, is not a right, but a privilege subject to conditional public licensure. *See, e.g., Attorney Grievance Commission of Maryland v. Reamer*, 281 Md. 323, 330–31, 379 A.2d 171, 176 (1977). Such professions may harm the public if practiced improperly. A state necessarily reserves the power to condition such privileges on conditions consistent with the nature and purpose of the privilege. *Id.* Thus, such privileges are subject to the State's inherent police power. *See Commission*

*on Medical Discipline v. Stillman,* 291 Md. 390, 405–06, 435 A.2d 747, 755 (1981).

Furthermore, Evans had no vested right in the maintenance of existing regulations governing public lobbying registration. While the Supreme Court in *Landgraf* recognized that the presumption against statutory retroactivity is strongest where retroactive application would undermine the stability and predictability of property and contractual rights, 511 U.S. at 271, 114 S.Ct. at 1500, stability or predictability of public licensing requirements are not essential to the existence of effective licensing regimes. The State must remain able to alter its licensing/registration requirements in order to accommodate evolving public needs and concerns. Evans cannot argue persuasively that he did not have "fair notice" that he would be subject to the specific requirements of § 15–405(e) at the time that he engaged in his criminal conduct. He was on notice that his last previous registration inevitably would expire on its own terms, which it did. Evans also was on notice that the regulations governing any application for future registrations were subject to change, and that he could only register anew by re-applying under whatever regulations were in place at the time of each subsequent application.[8]

Second, application of § 15–405(e) to Evans did not subject him to new duties or increased liability within the meaning of *Landgraf* or our cases. The contemplated tort liability in *Landgraf* and *Amecom* implicated new, affirmative, and unconditional requirements that the employer make restitution

---

8. Maryland regulations governing the licensing of regulated lobbyists provide for the expiration of all lobbying registrations on 31 October of each year. *See* COMAR 19A.07.01.04. All lobbyists are required to register "within 5 days after first performing an act that requires registration," or "on or before November 1 of each year if the lobbyist has not yet registered and the lobbyist will be engaged in lobbying activity during the upcoming lobbying reporting period." *Id.* Section 15–405(e) went into effect on 1 November 2001, at the inception of the 2001–2002 registration period. 2001 Md. Laws, Chap. 63. Therefore, all lobbying registrations predating 1 November 2001 expired on their own terms before § 15–405(e) went into effect, requiring a new registration under the terms of the new statute.

in the form of damages or reinstatement, respectively. Section 15–405(e) placed no similar duties upon Evans. It did not require Evans to report back to prison or to pay any additional damages or fines. Md.Code (1999, 2003 Supp.), § 15–405(e) of the State Government Article. The State Ethics Commission, by revoking Evans' lobbying registration, followed the mandate of § 15–405 to protect the integrity of the regulated public profession committed to its supervision. The Commission was given the opportunity to do so because Evans applied for registration within two years of being convicted of a crime of moral turpitude arising out of lobbying activities.

Section 15–405(e) imposed no new burdens or duties on transactions completed by Evans before the effective date of the statute. Unlike the defendants in *Landgraf, Amecom,* and *Rigger,* Evans effectively had a pre-existing legal duty not to commit crimes of moral turpitude arising out of lobbying activities: such activities already were unlawful under federal law at the time of his misconduct. *See* 18 U.S.C. §§ 1341, 1346; 18 U.S.C. § 2. Thus, § 15–405(e) imposed no new duty on Evans than previously existed under federal law.

Further unlike the cases discussed above, all of the events precipitating the application of § 15–405(e) to Evans were not completed before § 15–405(e) became effective. The Commission applied § 15–405(e) to revoke the registration Evans sought after its effective date. As noted earlier, his previous registration had expired of its own terms. In order for § 15–405(e) to apply to him, it was necessary that Evans apply for a new lobbying registration within two years of his conviction, which he obligingly did.[9] Thus, the final precipitating event for the application of § 15–405(e) was not Evans' pre-enactment criminal conviction, but his application for the registration, after the effective date of the statutory change, and

---

**9.** Had he waited to apply until two years had elapsed following his conviction, Evans, it appears, would have evaded application of § 15–405(e) altogether. As no clear legislative history was adduced by the parties to explain the curious choice of this two year "statute of limitations," and we could find none, one is left to speculate as to why this provision was included in the legislation.

within two years of his conviction. Because this event was not completed until after the statutory effective date, it did not constitute a "transaction already completed" within the meaning of *Landgraf.*

The Circuit Court in this case erroneously applied *Allstate v. Kim* in concluding that Evans' new application after the enactment of § 15–405(e) and within two years of his conviction was "of no significance." *Kim,* like our other cases discussed here, applied the presumption against retroactive application of a statute where the proposed application would be unquestionably retroactive. The passage in *Kim* relied upon by the Circuit Court, 376 Md. at 289–290, 829 A.2d at 618–619, did not define retroactivity, however. Instead, it dealt with whether "context" indicated a legislative *intent* to have the statute in question apply retrospectively. *Id.* We had no need in *Kim* to dwell on whether the proposed statutory application should be considered prospective or retroactive for, as in *Landgraf,* the proposed application of the statute in *Kim* was undisputedly retroactive.[10] *Id.* We principally analyzed whether the Legislature *intended* for the statute in question to have retroactive effect. *Kim,* 376 Md. at 290–92, 829 A.2d at 619–20. The Circuit Court in the present case incorrectly reasoned that, under *Kim,* the fact that Evans' license application postdated the effective date § 15–405(e) was "of no significance." To the contrary, it is a key reason why § 15–405(e), as applied to Evans, was prospective.

Concluding that § 15–405(e) was applied prospectively to Evans also is consistent with the holdings of other state courts confronted with analogous situations. In *R.A.M. of South Florida, Inc.,* a licensing statute granting unlicensed contractors the right to cure their unlicensed status without invalidat-

---

**10.** The statute in *Kim* altered vested contractual rights of the insurance company by changing the terms of a pre-existing insurance policy. *Kim,* 376 Md. at 299–300, 829 A.2d at 624–625. Additionally, the transactions precipitating the application of the parent-child immunity statute (issuance of the insurance policy and the subsequent car accident) were completed before the statute went into effect.

ing pre-existing contracts was amended to revoke the right to cure. 869 So.2d 1210, 1214 (Fla.Dist.Ct.App.2004), *cert granted, citation not available.* The appellant general contractor in *R.A.M.*, without the benefit of the required license, pursued a masonry contract with a subcontractor. *R.A.M.*, 869 So.2d at 1213. A dispute arose and the subcontractor, in order to discharge its obligations, obtained a declaratory judgment that the contract was illegal and unenforceable. *R.A.M.*, 869 So.2d at 1214. On appeal, the general contractor claimed that it was entitled to cure its unlicensed status under the previous version of the statute because the parties had entered into their contract *before* the statute eliminating the cure opportunity was enacted. *R.A.M.*, 869 So.2d at 1215.

Applying *Landgraf,* the District Court of Appeal of Florida found that the statute was not retrospective in its application. *R.A.M.*, 869 So.2d at 1214, 1216–18. The court held that the general contractor was on "fair notice" that the statutory provision allowing the general contractor to cure its unlicensed status was "a matter of legislative grace that could be withdrawn by subsequent legislative action." *R.A.M.*, 869 So.2d at 1217. The court reasoned that the general contractor "could have had no settled expectation or claim of reasonable reliance based on the cure provision until [it] had taken the steps necessary to be legally licensed." *Id.* Further, the court found that the amendment to the statute did not "attach new legal consequences to events completed before its enactment" because the general contractor had not exercised its right to cure under the previous statute; thus, "there was no relevant event completed before the effective date of the [amended] statute." *R.A.M.*, 869 So.2d at 1218.

The general contractor in *R.A.M.* did not have a "vested right" to cure its unlicensed status because a vested right "must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand." *Id.* The court distinguished vested rights from expectant or contingent rights, pointing out that "rights are vested . . . when the right to enjoyment,

present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting." *Id.* The unlicensed general contractor "had nothing more than a hope that the opportunity to cure its unlicensed status would remain available—a 'mere expectation based on anticipation of the continuance of an existing law.'" *Id.*

In *State of Wisconsin v. Chrysler Outboard Corp.*, the defendant corporation was required to abate a hazardous discharge under a statute enacted after the spill. 219 Wis.2d 130, 580 N.W.2d 203 (1998). The statute required that "[p]ersons ... who cause a hazardous discharge, shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from any discharge to the air, lands or waters of this state." *Chrysler Outboard Corp.*, 580 N.W.2d at 207. Citing *Landgraf,* the Supreme Court of Wisconsin held that application of the statute to a pre-enactment discharge would not be a retroactive application. Thus, the court found that the discharge was a continuing event because the corporation failed to abate it. *Chrysler Outboard Corp.*, 580 N.W.2d at 219. As a result, the statute requiring the cleanup did not "attach new legal consequences to events completed before the effective date of the Spill Law." *Chrysler Outboard Corp.*, 580 N.W.2d at 219. The court in *Chrysler Outboard* found that the event precipitating the application of the statute was not completed, as the precipitating event included the hazardous discharge, coupled with the continuing failure to abate.[11]

---

11. The Wisconsin legislature emphasized that failure to clean up hazardous spills poses the same environmental risk "whether or not the seepage of a hazardous substance occurred in relation to some human activity at the time that the seepage occurred." *Chrysler Outboard Corp.*, 580 N.W.2d at 219. The court recognized a legislative purpose

The Majority opinion's conclusion in the present case that § 15–405(e) was applied retroactively to Evans improperly expands the definition of "retroactive application." Under the Majority's view, the presumption against retroactivity successfully may be invoked whenever a statute or licensing scheme operates on past events in any way, ignoring the qualified definition and caveat of caution in this regard found in Supreme Court, other state court, and our own cases. The Majority labels retroactive the Commission's application of the statute to Evans despite the fact that § 15–405(e) did not impair in this case any previously vested rights, was applied only to a post-effective-date registration application, and was not applied to a transaction completed before the statutory effective date.

For the foregoing reasons, I would reverse the judgment of the Circuit Court for Anne Arundel County and remand the matter to that Court with directions to affirm the action of the State Ethics Commission.

Judge CATHELL authorizes me to state that he joins this dissent.

---

of the statute was to combat the equally deleterious effects of failure to remediate hazardous spills. As such, failure to clean up previous hazardous spills constituted a continuing violation of the statute.