61 A.3d 33

**Felix L. JOHNSON, Jr., Deceased**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 45, Sept. Term, 2012.**

Court of Appeals of Maryland.

Feb. 25, 2013.

Harrell, J., filed a dissenting opinion, in which Bell, C.J., and Cathell, J., joined.

Paul D. Bekman (Katharine O. Porwick of Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., Baltimore, MD), on brief, for petitioner.

William R. Phelan, Jr., Chief Solicitor and Herbert Burgunder, Jr., Special Principal Counsel (George A. Nilson, City Solicitor, and Minda F. Goldberg, Chief Solicitor, Baltimore City Department of Law, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, BARBERA, McDONALD and DALE R. CATHELL (Retired, Specially Assigned), JJ.

BARBERA, J.

The Maryland Workers' Compensation Act allows the surviving dependents of a firefighter who died from an occupational disease to collect both pension and workers' compensation benefits after the firefighter's death, up to the amount of what had been the firefighter's weekly salary. Md.Code (1999, 2008 Repl.Vol., 2012 Supp.), § 9–503(e) of the Labor and Employment Article.[1] This policy has been in effect since

---

1. The Act also applies to other specified public safety workers. Section 9–503(e) reads as follows (emphasis added in bold):

   (e) *Benefits in addition to retirement benefits.*—(1) Except as provided in paragraph (2) of this subsection, any paid firefighter, paid fire fighting instructor, sworn member of the Office of the State Fire Marshal, paid police officer, paid law enforcement employee of the Department of Natural Resources, deputy sheriff of Anne Arundel County, park police officer or employee of the Maryland–National Capital Park and Planning Commission, deputy sheriff of Montgomery County, deputy sheriff of Baltimore City, Montgomery County correctional officer, deputy sheriff of Prince George's County, or Prince George's County correctional officer who is eligible for benefits under subsection (a), (b), (c), or (d) of this section **or the dependents of those individuals** shall receive the benefits in addition to any benefits that the individual **or the dependents of the individual**

October 1, 2007, when the General Assembly amended the Act specifically to make dependents eligible for these dual benefits. Previously, dependents who wished to collect pension survivorship benefits and workers' compensation death benefits had the total amount of the deceased worker's compensation benefits reduced by the amount of the pension benefits under § 9–610.[2] The offset provided in § 9–610 continues to

are entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the paid law enforcement employee of the Department of Natural Resources, a park police officer or employee of the Maryland–National Capital Park and Planning Commission, firefighter, fire fighting instructor, sworn member of the Office of the State Fire Marshal, police officer, deputy sheriff, or Prince George's County or Montgomery County correctional officer.

All references to the Maryland Code hereinafter are to the Labor and Employment Article, unless otherwise noted.

**2. 9–610. Offset against other benefits.**

(a) *Covered employee of governmental unit or quasi-public corporation.*—(1)  Except for benefits subject to an offset under § 29–118 of the State Personnel and Pensions Article, if a statute, charter, ordinance, resolution, regulation, or policy, regardless of whether part of a pension system, provides a benefit to a covered employee of a governmental unit or a quasi-public corporation that is subject to this title under § 9–201(2) of this title or, in case of death, to the dependents of the covered employee, payment of the benefit by the employer satisfies, to the extent of the payment, the liability of the employer and the Subsequent Injury Fund for payment of similar benefits under this title.

(2) If a benefit paid under paragraph (1) of this subsection is less than the benefits provided under this title, the employer, the Subsequent Injury Fund, or both shall provide an additional benefit that equals the difference between the benefit paid under paragraph (1) of this subsection and the benefits provided under this title.

(3) The computation of an additional benefit payable under paragraph (2) of this section shall be done at the time of the initial award and may not include any cost of living adjustment after the initial award.

\*     \*     \*

(c) *Powers of Commission.*—(1)  The Commission may:

(i) determine whether any benefit provided by the employer is equal to or greater than any benefit provided for in this title;  and

apply to all government employees who are not specifically exempted under § 9–503(e).

We are confronted in this case with the question of whether a widow whose claim was pending at the time of the 2007 amendments, and who wishes to collect both her husband's retirement and workers' compensation benefits, is entitled to collect under the amended § 9–503(e) or, instead, is bound by the general offset provision of § 9–610. In other words, did the General Assembly intend that the 2007 amendments to § 9–503(e) apply retroactively to all claims pending at the time or only prospectively to new claims? For reasons we shall explain, we affirm the judgment of the Court of Special Appeals and hold that the amendments to § 9–503(e) do not apply retroactively. As a result, Petitioner's claim is governed by the offset provisions of § 9–610.

I.

Felix L. Johnson, Jr. worked as a firefighter in Baltimore City for nearly 26 years until he retired on June 9, 1990. One month later, he married Janice Johnson (hereinafter "Petitioner").[3] Petitioner was not employed at the time and was entirely dependent on her husband for support. Johnson died of a heart attack at the age of 63 on November 7, 2005. As his widow, Petitioner began receiving survivorship benefits from her husband's pension shortly after his death.

On January 10, 2006, Petitioner filed a dependent's claim for death benefits under the Maryland Workers' Compensation Act. As to the cause of Johnson's disease, Petitioner stated in

---

(ii) make an award against the employer or the Subsequent Injury Fund or both to provide an additional benefit that equals the difference between the benefit provided by the employer and the benefits required by this title.

(2) A claim that comes under this section is subject to the continuing powers and jurisdiction of the Commission.

**3.** The case is captioned in the name of Felix L. Johnson, Jr., now deceased. His widow, Janice Johnson, is pursuing the claim and seeking benefits in this case. For the sake of clarity and convenience, we shall refer to Janice Johnson as Petitioner.

her claim: "The decedent was continuously exposed to heat, smoke, noxious fumes and the product of combustion, causing him to sustain heart disease resulting in death." The claim came on for a hearing before the Workers' Compensation Commission ("Commission") on October 1, 2009. Petitioner testified in support of her claim and was questioned regarding her dependency on her husband, his general health, and the linkage between his employment as a firefighter and his death from a heart attack. The major dispute at the hearing concerned what provision of the Act was applicable to Petitioner's claim. The City, Respondent here, a self-insured employer, argued that the dollar-for-dollar offset under § 9–610 should apply because § 9–503(e) was not amended to include dependents in its scope of coverage until 2007. Petitioner, meanwhile, argued that the weekly salary cap under § 9–503(e) should apply to her claim because her claim was pending at the time the General Assembly enacted the amendments.

The Commission issued an initial award of benefits to Petitioner on December 4, 2009, but later rescinded that decision and issued an amended award on February 26, 2010, reducing the total amount of Petitioner's weekly benefits.[4] As part of its findings, the Commission determined that Johnson "sustained an occupational disease (heart disease) arising out of and in the course of employment" and died as a result. The Commission found further that Petitioner was wholly dependent on her husband for support. Finally, the Commission determined that § 9–503(e) governed the claim, which effectively meant that the dollar-for-dollar offset under § 9–610 would not apply.

The City filed a petition for judicial review with the Circuit Court for Baltimore City on December 30, 2009, challenging only the Commission's conclusion that § 9–503(e) applied to

---

4. Based on Johnson's average weekly wage at the time of his death ($625), the Commission initially awarded Petitioner $417 per week. On February 26, 2010, the Commission amended its award in order to change the weekly amount from $417 to $358.08.

Petitioner's claim.[5]  Both sides filed cross-motions for summary judgment and the matter came on for a hearing before the Circuit Court on September 1, 2010.  In granting the City's motion for summary judgment, and denying the motion filed by Petitioner, the Circuit Court ruled that at the time Petitioner's claim arose in 2005, § 9–503 "did not include the dependents of firefighters."  Rather than viewing the 2007 amendments to § 9–503 as being remedial, as Petitioner urged, the Circuit Court concluded that "the statute provides a substantive right to a class of individuals."  As a result, the Circuit Court ruled that dependents, such as Petitioner, had no preexisting right to dual benefits prior to the statute's amendment.  The Circuit Court concluded that, although this was "a very harsh result," the amended statute did not apply to Petitioner's claim and the claim instead was governed by the offset provision in § 9–610.

The Court of Special Appeals affirmed the decision of the Circuit Court, concluding that the 2007 amendments involved a "substantive change" in the law that precluded it from applying to pending cases.[6]  *Johnson v. Mayor and City Coun-*

---

**5.**  The Circuit Court granted a motion to consolidate what had been two appeals into a single case.  One appeal had been filed in response to the December 2009 Commission award and a second was filed after the amended award was issued in February 2010.

**6.**  In so holding, the Court of Special Appeals stated the following:

In the final analysis, we conclude that the 2007 amendment to [Labor and Employment Article] § 9–503(c) may not be applied retrospectively.  The change in LE § 9–503(c) was intended by the General Assembly to address the Court's decision in *Johnson [v. Mayor and City Council of Baltimore,* 387 Md. 1, 874 A.2d 439 (2005)] and to clarify the law to provide for dual benefits to the surviving dependents of certain public employees who are presumed to have died because of their occupational disease.  There is no clear directive from the General Assembly that the amendment should apply retrospectively.  The amendment has an adverse impact on the size of the class of eligible claimants who would benefit, and this effects a substantive change in the "legal landscape" and enlarges the obligations of public employers.  The amended law creates an "obligation" that the employer had not previously been required to meet. *Johnson v. Mayor and City Council of Baltimore,* 203 Md.App. 673, 702–03, 40 A.3d 475 (2012).

*cil of Baltimore,* 203 Md.App. 673, 703–04, 40 A.3d 475 (2012). Petitioner sought a writ of certiorari in this Court, which we granted on August 20, 2012. *Johnson v. Mayor and City Council of Baltimore,* 427 Md. 606, 50 A.3d 606 (2012).

## II.

Section 9–745 governs appeals of decisions by the Workers' Compensation Commission.[7] The Commission's decision "is presumed to be prima facie correct," § 9–745(b)(1), but "this presumption does not extend to questions of law, which we review independently." *Montgomery County v. Deibler,* 423 Md. 54, 60, 31 A.3d 191 (2011) (citing *Wal Mart Stores, Inc. v. Holmes,* 416 Md. 346, 357, 7 A.3d 13 (2010)). This appeal is from the Circuit Court's grant of summary judgment in favor of the City. "When reviewing a grant of summary judgment, we must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such dispute is absent will we proceed to review determinations of law." *Stachowski v. Sysco Food Servs. of Baltimore, Inc.,* 402 Md. 506, 515–516, 937 A.2d 195 (2007) (quoting *Remsburg v. Montgomery,* 376 Md. 568, 579, 831 A.2d 18 (2003)). The parties agree on the facts, leaving the interpretation of § 9–503(e) as the sole legal issue before us. "The standard of review of a trial court's grant of a motion for summary judgment on the law is de novo, that is, whether the trial court's legal conclusions were legally correct." *D'Aoust v. Diamond,* 424 Md. 549, 574, 36 A.3d 941 (2012) (quoting *Messing v. Bank of Am., N.A.,* 373 Md. 672,

---

**7.** There are two avenues by which an aggrieved party may challenge a decision of the Commission:

A party dissatisfied by the action of the Commission may seek review in a circuit court by either proceeding on the record made before the Commission (much like judicial review of the final action of most state administrative agencies) or receive a new evidentiary hearing and decision before a jury (much like an original civil complaint brought in a circuit court).

*Baltimore County v. Kelly,* 391 Md. 64, 67–68, 891 A.2d 1103 (2006). The City elected to proceed on the record before the Commission, challenging only the legal conclusions drawn by the Commission.

684, 821 A.2d 22 (2003)); *see also Uninsured Employers' Fund v. Danner*, 388 Md. 649, 658–59, 882 A.2d 271 (2005) (citing *Johnson v. Mayor and City Council of Baltimore*, 387 Md. 1, 5–6, 874 A.2d 439 (2005)) (noting that "the standard of review in a workers' compensation claim disposed of at summary judgment by the Circuit Court is *de novo* ").

The purpose and design of the Act factor into our interpretation of its provisions. As part of our review, "we recognize that the Act is a remedial statute." *Deibler*, 423 Md. at 61, 31 A.3d 191 (citing *Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724, 882 A.2d 817 (2005)). "The purpose of the Act is 'to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment.' " *Id.* (quoting *Howard County Assoc. for Retarded Citizens, Inc. v. Walls*, 288 Md. 526, 531, 418 A.2d 1210 (1980)). "Therefore, we have been consistent in holding that the Act must be 'construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Id.* (quoting *Lagos*, 388 Md. at 724, 882 A.2d 817).

Our approach follows the general principles of statutory interpretation. "First, if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569 (2001) (citing *Marriott Employees v. Motor Vehicle Admin.*, 346 Md. 437, 445, 697 A.2d 455 (1997)). "Second, when the meaning of the plain language is ambiguous or unclear, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Id.* (citing *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 437, 677 A.2d 73 (1996)). "Last, applying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any

uncertainty in favor of the claimant." *Id.* (citing *Baltimore v. Cassidy*, 338 Md. 88, 97, 656 A.2d 757 (1995)). "This Court, however, may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail." *Id.* (citing *Morris v. Bd. of Educ.*, 339 Md. 374, 384, 663 A.2d 578 (1995)).

### III.

Nearly 100 years ago, the General Assembly enacted the Maryland Workers' Compensation Act.[8] Chapter 800 of the Acts of 1914. In its original form, the Act "provided compensation only for disability or death of an employee from an 'accidental injury' that arose out of and in the course of employment." *Yox v. Tru–Rol Co.*, 380 Md. 326, 330–31, 844 A.2d 1151 (2004) (citing *Belschner v. Anchor Post*, 227 Md. 89, 92, 175 A.2d 419 (1961)). The General Assembly amended the law in 1939 to provide compensation for injuries that arose because of certain occupational diseases and revised the law again in 1951 to provide coverage for all occupational diseases. *Id.* at 331–32, 844 A.2d 1151. In 1971, recognizing that firefighters were "susceptible to diseases formerly not recognized as occupational," the General Assembly amended the Act to grant a presumption in favor of compensation for "certain classes of fire fighters suffering from heart or lung disease, or hypertension." *Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 78, 684 A.2d 1338 (1996). This presumption later was expanded to include additional public safety workers, such as police officers, and to cover additional occupational diseases.[9] *Johnson*, 387 Md. at 13–14, 874 A.2d 439.

---

8. Prior to the 1914 law, Maryland had in place an "Employers' and Employees' Cooperative Insurance Fund," but it covered only a few select occupations. Richard P. Gilbert & Robert L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 1.03 (3d ed.2007). These included private transportation, quarry and mining operations, and private construction contracting work. *Id.*

9. An occupational disease is "one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its

We last had cause to analyze the occupational disease provisions of the Act in *Johnson v. Mayor and City Council of Baltimore*, 387 Md. 1, 874 A.2d 439 (2005).[10] We observed that § 9–502 "requires employers and insurers to compensate covered employees and their dependents for disability or death that results from occupational disease." 387 Md. at 6, 874 A.2d 439. The liability of employers is limited, though, "by requiring the occupational disease to meet certain requirements in order to be compensable." *Id.* "Section 9–503 of the Labor and Employment Article carves out an exception to the general occupational disease provisions noted in § 9–502 by giving special treatment to employees in particular professions who are suffering from particular diseases." *Id.* at 7, 874 A.2d 439. A presumption exists that occupational diseases contracted by certain employees, including firefighters, are compensable. *Id.* at 7–8, 874 A.2d 439. At the time we analyzed § 9–503(e) in *Johnson*, the provision allowed for firefighters and other qualified employees to receive both workers' compensation benefits and pension benefits, up to the total amount of the covered employee's weekly salary. *Id.*

We considered in *Johnson* a claim brought by the widows of two firefighters whose husbands had died of cancer as a result of their work. *Id.* at 3, 874 A.2d 439. The widows argued they were entitled to collect the full amount of their husbands' workers' compensation death benefits in addition to their husbands' pension benefits, rather than having the workers'

---

origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant." *Johnson v. Mayor and City Council of Baltimore*, 387 Md. 1, 6 n. 5, 874 A.2d 439 (2005) (quoting *Polomski v. Mayor and City Council of Baltimore*, 344 Md. 70, 78 n. 8, 684 A.2d 1338 (1996)). *See also* § 9–502 (defining an employer's liability on an employee who suffers from an occupational disease); § 9–503(a) (stating that firefighters and other specified public safety employees who have heart disease are presumed to have a compensable occupational disease that was suffered in the line of duty).

**10.** That case also involved a firefighter with the last name of Johnson (Ernest A. Johnson). As noted by the Court of Special Appeals, Ernest Johnson was not related to Felix L. Johnson, Jr., the deceased firefighter in the case before us. *Johnson v. Mayor and City Council of Baltimore*, 203 Md.App. 673, 689, 40 A.3d 475 (2012).

compensation benefits reduced by the amount they received from the pensions. *Id.* We held that the statute permitted dual recovery of such benefits by firefighters, but not by their surviving dependents. *Id.*

In reaching that conclusion, we observed that § 9–503(e), as written, made no mention of dependents.[11] *Id.* at 9, 874 A.2d 439. We stated that "[t]he language in that section reads as if the Legislature intended to provide benefits to firefighters ... who are living but unable to work as a result of their occupational diseases." *Id.* at 16, 874 A.2d 439. In contrast, § 9–610, which described the offset of benefits for covered employees generally, indicated that it applied to dependents, as well. *Id.* at 9, 874 A.2d 439. We declined to read the word "dependents" into § 9–503(e), noting that the language was "clear and unambiguous." *Id.* at 22, 874 A.2d 439. We observed that the General Assembly was not required to treat all public employees the same, or to treat the dependents of firefighters in a similar manner as the firefighters themselves. *Id.* at 18, 874 A.2d 439. We held that our interpretation was consistent with the overall framework of the Act. *Id.* at 20, 874 A.2d 439. We acknowledged, however, that the General Assembly could, if it chose to do so, remedy any perceived unfairness in the final result:

In the instant case, it is clear that the Legislature found it acceptable to treat living firefighters suffering from certain cancers and other occupational diseases differently than the dependents of those firefighters. While that result may

---

**11.** The provision at the time read, in pertinent part, as follows:

(e) *Benefits in addition to retirement benefits.*—(1) Except as provided in paragraph (2) of this subsection, any paid firefighter ... who is eligible for benefits under subsection (a), (b), (c), or (d) of this section shall receive the benefits in addition to any benefits that the individual is entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the ... firefighter[.] Md.Code (1991, 1999 Repl.Vol., 2005 Supp.), § 9–503(e) of the Labor and Employment Article.

seem unfair to some, the Court is not free to ignore the statutory requirements in order to remedy any perceived unfairness.

*Id.* at 21, 874 A.2d 439.

In response to *Johnson,* the General Assembly amended § 9–503(e) in 2007 to include the dependents of firefighters and other public safety workers as a category of people entitled to collect dual pension and workers' compensation benefits. Chapters 350–51 of the Acts of 2007. The title clauses of Senate Bill 752 and House Bill 1117 explained the reason behind the change:

> FOR the purpose of clarifying that surviving dependents of certain individuals are eligible to receive the same workers' compensation benefits as the individual received at the time of death; and generally relating to workers' compensation benefits for dependents.

*Id.*

The Court of Special Appeals characterized the amendments as remedying what the General Assembly evidently "viewed as a defect in the current law." *Johnson,* 203 Md.App. at 692, 40 A.3d 475. The question we are now asked to decide is whether these amendments apply prospectively only, or if they retroactively apply to all claims that were pending at the time the change was enacted.

## IV.

In deciding whether a statute applies to future cases only or if it has any retroactive effect, we have set forth four basic principles intended to guide our analysis.

> (1) [S]tatutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny

due process, or violate the prohibition against *ex post facto* laws.

*Pautsch v. Md. Real Estate Comm'n*, 423 Md. 229, 263, 31 A.3d 489 (2011) (quoting *State Ethics Comm'n v. Evans*, 382 Md. 370, 381, 855 A.2d 364 (2004)). For reasons we shall explain, we do not need to reach the fourth element of the test. In applying the remaining principles to this case, we are left with two questions: (1) Did the General Assembly intend for the law to apply retroactively?; and, if the intent is unclear, (2) Does the statute govern procedure or remedy so that it should be applied to cases that were pending in court at the time the statute became effective?

Petitioner would answer yes to both questions. Petitioner acknowledges that statutes generally apply prospectively but argues that, by drafting a remedial statute, lawmakers intended for the law to apply retroactively. She contends that the 2007 amendments are remedial because the General Assembly was attempting to correct a defect that it perceived had been created by our opinion in *Johnson*. Petitioner maintains that applying § 9–503(e) to pending claims is in line with the spirit behind the Maryland Workers' Compensation Act, which is meant to be construed broadly in favor of injured workers and those who depend on them.

The City responds that we do not need to consider legislative intent because the language of the statute is clear and does not contain a provision that states it should be applied retroactively. But even if we do consider legislative intent, the City maintains that there is no clear intent within the legislative history regarding retroactivity. The City argues that this Court did not change existing law when it held in *Johnson* that dual benefits were not available to dependents of firefighters under § 9–503(e). It was not until the General Assembly amended § 9–503(e) that dual benefits became available to dependents. The City argues that expanding this right to dependents created a new substantive right for them, and this cannot be construed as merely a remedial action.

In deciding whether, under the first question identified in *Pautsch* (whether the presumption of prospective appli-

cation is overcome by the apparent intent of the General Assembly that the law be applied retroactively), we employ the standard principles of statutory interpretation. "To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute." *Gardner v. State,* 420 Md. 1, 8, 20 A.3d 801 (2011) (quoting *State v. Johnson,* 415 Md. 413, 421, 2 A.3d 368 (2010)). The relevant portion of § 9–503(e) states:

(e) *Benefits in addition to retirement benefits.*—(1) Except as provided in paragraph (2) of this subsection, any paid firefighter . . . who is eligible for benefits . . . or the dependents of those individuals shall receive the benefits in addition to any benefits that the individual or the dependents of the individual are entitled to receive under the retirement system in which the individual was a participant at the time of the claim.

(2) The benefits received under this title shall be adjusted so that the weekly total of those benefits and retirement benefits does not exceed the weekly salary that was paid to the . . . firefighter . . . .

There is no indication from its statutory language or the effective date clause [12] that § 9–503(e) is intended to apply retroactively. In fact, there is no language at all stating whether the statute is meant to apply to future cases only, or if it may be applied to cases that were pending at the time of its enactment. What would be the strongest piece of evidence in favor of retroactivity—a statement in the bill indicating that the amendments apply to all claims pending at the time of adoption—is not available here. And we will not read language into the statute that is simply not there. *See Gardner,* 420 Md. at 9, 20 A.3d 801 (quoting *Johnson,* 415 Md. at 421, 2 A.3d 368) ("We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute . . . ."). As a result, we operate under

---

**12.** The effective date clause here states: "AND BE IT FURTHER ENACTED, That this Act shall take effect October 1, 2007." Chapters 350–51 of the Acts of 2007.

the presumption that the law is not retroactive. *Pautsch,* 423 Md. at 263, 31 A.3d 489 (quoting *Evans,* 382 Md. at 381, 855 A.2d 364) ("[S]tatutes are presumed to operate prospectively unless a contrary intent appears."); *see also Washington Suburban Sanitary Com. v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 568, 520 A.2d 1319 (1987) ("[W]hen the General Assembly intends a statute to have a retrospective application, it knows how to express that intent.").

Petitioner does not direct us to anything in the legislative history explicitly indicating an intent on the part of the General Assembly to have the law apply retroactively, and we have found none. Instead, Petitioner argues that the General Assembly intended for the law to be remedial and, consequently, did not need to state that the law applied retroactively in order for it to be applied in this manner.[13] *See Pautsch,* 423 Md. at 263, 31 A.3d 489 (quoting *Evans,* 382 Md. at 381, 855 A.2d 364) (noting that "a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective"). This argument implicates the second question identified in *Pautsch:* Does the statute govern procedure or remedy so that it should be applied to cases that were pending in court at the time the statute became effective? Under Petitioner's theory, if we answer yes to this question, then it is assumed that the General Assembly intended for the law to apply retroactively.

---

13. Petitioner notes that the General Assembly has amended other portions of § 9–503, and stated in several instances that the changes were meant to be prospective only. Petitioner notes that, when the Act was amended in 2010 to include deputy sheriffs from Allegany County and in 2011 to include deputy sheriffs from Anne Arundel County, the bills indicated they applied prospectively. Additionally, when the list of qualifying diseases and cancers was altered in 2012, the General Assembly added specific dates that stated when the changes would be applied. Accordingly, Petitioner argues that the General Assembly did not have to state explicitly in the amendments that the changes were to have retroactive effect. Had the General Assembly meant these amendments to be prospective only, lawmakers would have indicated this within the amendments, Petitioner argues. This interpretation turns the general presumption of prospective-only application on its head and renders it meaningless, which is why Petitioner's argument on this point fails to persuade us.

Petitioner cites *Weathersby v. Kentucky Fried Chicken Nat'l Management Co.*, 86 Md.App. 533, 550, 587 A.2d 569 (1991), for the proposition that remedial statutes are "designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good." Petitioner contends that the law is remedial because "[t]he General Assembly was correcting a defect that it perceived to be created by this Court's decision in [*Johnson* ]." By seeking to restore prior law, Petitioner argues that the General Assembly was "addressing a grievance that was in the interest of the public good." The City counters that the amendments were substantive because they enlarged the potential class of beneficiaries to include dependents.

Both parties direct us to the case of *Langston v. Riffe*, 359 Md. 396, 754 A.2d 389 (2000), contending that it offers support for their respective positions. In *Langston*, we considered consolidated actions in which men who had been declared fathers of children in previous paternity proceedings sought to set aside those judgments based on new evidence suggesting that the men, in fact, were not actually the fathers. *Id.* at 399, 754 A.2d 389. At issue was Maryland Code (1984, 1999 Repl.Vol.), § 5–1038(a)(2)(i)2 of the Family Law Article, which allowed trial courts to set aside or modify a prior paternity decision in light of genetic or blood testing. Our task was to decide if this provision applied to cases decided prior to the statute's effective date. *Id.* at 403, 754 A.2d 389. We said:

> Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes and omissions in the civil institutions and the administration of the state. The definition of a remedial statute has also been stated as a statute that relates to practice, procedure, or remedies and does not affect substantive or vested rights.

*Id.* at 408–09, 754 A.2d 389.

After reviewing the "extensive" legislative history, we concluded that the General Assembly intended for the statute at

issue in *Langston* to be remedial.[14]  *Id.* at 417, 754 A.2d 389. We characterized the statute as "expanding the procedure for remedying the perceived problem" by creating another avenue by which putative fathers could challenge a prior paternity determination.  *Id. Langston* instructs us on one instance in which a statute was determined to be remedial, but the facts at issue there differ considerably from those before us now.

*Langston* is not the only case in which we have considered whether a statute is remedial.  A second is *Doe v. Roe*, 419 Md. 687, 20 A.3d 787 (2011), in which we considered what, if any, retroactive effect should be given to a change in the statute of limitations for filing civil sexual abuse claims.  *Id.* at 688–89, 20 A.3d 787.  The plaintiff Roe alleged that her grandfather Doe raped her twice while she was a minor, and she filed a civil suit against him on September 3, 2008.  *Id.* at 689–90, 20 A.3d 787.  Roe filed her claim nearly seven years after she reached the age of majority, the point at which the statute of limitations had begun to run on her claim.  *Id.* at 690, 20 A.3d 787.  In 2003, the General Assembly amended the statute of limitations on filing civil sexual abuse claims, changing it from three years to seven years.  *Id.* We were asked whether Roe's claim was governed by the seven-year limitations period, or whether the three-year limitations period applied because the statute of limitations had already begun to run against her when the General Assembly amended the statute.  *Id.* at 688–89, 20 A.3d 787.

We concluded that the extension of the limitations period was remedial, noting that it "improves remedies already existing for the enforcement of rights and the redress of injuries." *Id.* at 703, 20 A.3d 787 (quoting *Langston*, 359 Md. at 408, 754 A.2d 389).  In reaching this conclusion, we noted that a

---

14. Specifically, we observed that the law was in direct response to our decision in *Tandra S. v. Tyrone W.*, 336 Md. 303, 648 A.2d 439 (1994), in which we denied putative fathers the right to challenge past paternity decisions because newly produced genetic or blood testing did not constitute a fraud, mistake, or irregularity necessary to revise the earlier judgment. *Langston v. Riffe*, 359 Md. 396, 405, 754 A.2d 389 (2000).

majority of jurisdictions hold that a change in a limitations period is "procedural or remedial in nature" when applied to claims that are not yet barred by the statute of limitations. *Id.* at 704, 20 A.3d 787. We drew a distinction between cases that might create new substantive rights through a new cause of action versus situations, such as in *Doe,* where there were viable claims already existing that merely could be filed later based on the extended limitations period. *Id.* at 705–06, 20 A.3d 787. As a result, we concluded that Roe and others whose claims were not already barred by the statute of limitations could file their claims pursuant to the lengthier limitations period. *Id.* at 689, 20 A.3d 787.

In both *Langston* and *Doe,* we dealt with changes to statutes that did not create new substantive rights but merely altered already-existing procedures. *Langston* gave putative fathers a new procedure by which they could seek to reopen a paternity determination. *Doe* extended the statute of limitations for claims, but did not create any new causes of action. But the change to § 9–503(e) we consider here is not easily categorized as remedial. This Court has made clear that "[a]n act is remedial in nature when it provides only for a new method of enforcement of a preexisting right." *Pak v. Hoang,* 378 Md. 315, 325, 835 A.2d 1185 (2003) (citing *State of Maryland Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 125, 360 A.2d 1 (1976)). Here, dependents did not have a right to claim dual benefits until the General Assembly amended the statute in 2007. As the Court of Special Appeals concluded below, "the amendments . . . are, at bottom, substantive." *Johnson,* 203 Md.App. at 696, 40 A.3d 475. They create a new class of people who are entitled to collect dual workers' compensation and pension benefits who were not able to do so previously.

We addressed a similar situation in *State of Maryland Comm'n on Human Relations v. Amecom Div. of Litton Sys., Inc.,* 278 Md. 120, 360 A.2d 1 (1976). In *Amecom,* we noted that the General Assembly had amended an employment discrimination statute in direct response to one of our previous

decisions. *Id.* at 124–125, 360 A.2d 1. The statute gave the Maryland Commission on Human Relations the ability to "bring action to obtain a temporary injunction" where "the commission believes that appropriate civil action is necessary to preserve the status of the parties or to prevent irreparable harm." *Id.* at 122, 360 A.2d 1. We noted that there was nothing in the legislative record to suggest that this new law should operate retroactively, and we concluded that the General Assembly "created an action based on what amounts to a new substantive right." *Id.* at 124–25, 360 A.2d 1. As a result, we held that the law should only be applied prospectively. *Id.* at 126, 360 A.2d 1.

Turning to the present case, we shall examine the legislative history behind the amendments to see if it sheds further light on whether we are dealing with a substantive change or a remedial one. We agree with Petitioner that our decision in *Johnson*, which holds that the statute, as written, did not include the dependents of firefighters and other rescue workers, was in the minds of lawmakers as they drafted the change to the law. The presence of a copy of the decision in the bill file is strong evidence of this fact, as is the ultimate change itself, which added the dependents of rescue workers to a statute that previously did not cover them. Moreover, the letter from the Attorney General to the Governor of Maryland, declaring the bills to have passed review for "constitutionality and legal sufficiency," notes that the bills "were apparently introduced in response to the holding in *Johnson* . . . ." This alone, however, does not mean the change was meant to be applied retroactively.

The purpose clauses for the two cross-filed, and ultimately-enacted, bills (House Bill 1117 and Senate Bill 752) provide some support for Petitioner's position. As noted earlier, the language of the title clauses reads as follows:

FOR the purpose of *clarifying* that surviving dependents of certain individuals are eligible to receive the same workers' compensation benefits as the individual received at the time

of death; and generally relating to workers' compensation benefits for dependents.

Chapters 350–51 of the Acts of 2007 (emphasis added).

The term "clarifying" sometimes can be helpful in signaling legislative intent. In *Chesek v. Jones,* 406 Md. 446, 959 A.2d 795 (2008), we were asked to determine whether a legislative committee always had the implied power to delegate its authority to issue subpoenas or if this ability came only through an express grant of power contained in legislation passed by the General Assembly. *Id.* at 456–57, 959 A.2d 795. We observed that, "[a]lthough a subsequent legislative amendment of a statute is not controlling as to the meaning of the prior law, nevertheless, subsequent legislation can be considered helpful to determine legislative intent." *Id.* at 462, 959 A.2d 795. We noted that the purpose behind the amendment was for *"clarifying* that the Legislative Policy Committee may delegate its authority to issue subpoenas." *Id.* (citing Chapter 546 of the Acts of 2007). We noted also that a representative from the Attorney General's Office testified before a House committee and stated that the amendment was designed to "resolve any disputes over subpoenas and witnesses' refusal to answer questions before certain legislative committees." *Id.*

We concluded ultimately that the legislative committee always had the implied power to delegate its subpoena power, and the General Assembly's actions in "clarifying" the law did not create a new power but merely acknowledged a power already in existence. *Id.* at 461–62, 959 A.2d 795. Our conclusion, however, was not driven solely by the use of the term "clarifying" in the purpose clause of the session law. There was additional evidence of the General Assembly's purpose, including that the General Assembly had inherent and express powers of investigation and that our interpretation was consistent with federal jurisprudence concerning the power of subcommittees. *Id.* at 459, 461, 959 A.2d 795.

*Chesek* teaches that the use of the word "clarifying" can mean, as Petitioner claims, that this is what lawmakers viewed as the state of the law all along. But the word can also signify

that the absence of dependents in the statute was an oversight that lawmakers subsequently decided to correct by "clarifying" the law.[15]   In both instances, it is clear that dependents are now entitled to collect dual benefits under § 9–503(e). What remains unclear is whether this change was intended to be applied retroactively.   Absent the type of additional evidence that supported our decision in *Chesek*, the use of the phrase "clarifying" by itself does not actually provide in this instance the *clarity* needed to resolve that question.

Petitioner directs us to statements made by various lawmakers in support of House Bill 1117 and Senate Bill 752, the bills that enacted the changes to § 9–503(e).   The late Delegate Ruth Kirk, one of the bill's sponsors, provided the following written testimony:

House Bill 1117 corrects an unintended inequity for dependents of injured firefighters, police officers and other public safety officers who have received workers' compensation benefits under the presumption statute.   The dependents of injured workers have historically received the same benefits as the worker after the worker dies.   In one section of the Workers' Compensation statute dependents of injured workers who die see their benefits reduced.   This bill will correct that unintended result.   It will assure that all surviving dependents of injured workers will receive the same benefit as the worker received.

Senator Nathaniel Exum, an author of the Senate bill, stated the following as he testified in support of the measure:

---

**15.**   We consulted the Legislative Drafting Manual for guidance on how bill drafters use the word "clarify."   The manual notes: "Other commonly used catchall provisions in the purpose paragraph are used to describe simple changes in style or language, such as 'making stylistic changes;', 'making conforming changes;', or 'clarifying language;'." Maryland Department of Legislative Services, Legislative Drafting Manual 2013, at 41 (2012).   This use of "clarifying"—to indicate a simple change in style or language—is different from its use in the present case, so this example does not provide us with any additional insight. The words "clarify" or "clarifying" are used in other places throughout the drafting manual, but we found nothing to aid us in our interpretation.

Let me explain this bill this way: I think it was about September 2005 that there was a case before the Court of Appeals I believe called the Johnson case. Normally, when these public safety employees, for lack of a better term to call them, have these occupational diseases if the dependent dies then his, if the claimant dies, then his dependents normally would receive those benefits and they would not be reduced and that was the case up until September 2005. Everybody thought that they would just normally receive those benefits and its been that way for years until I guess an assistant solicitor from the City of Baltimore challenged the law, went to court, and the court ruled that yes it was not clear that these dependents, these claimants' dependents could not receive those benefits without them being reduced and so those benefits were reduced which gives an equal equation in the terms of who receives benefits because only these occupational safety people, dependents, get reduced where the others do not get reduced, and so this Bill is to remedy that Johnson case and said that they will all get the same benefits if a claimant's dependent got those benefits.

Petitioner also relies on other materials in the legislative bill file in support of reading the statute as a remedial law. The floor reports for House Bill 1117 and Senate Bill 752 note that the amendments were designed to restore previous law. Analysis before the House and Senate finance committees similarly notes that the bill "RESTORES THE PRACTICE THAT WAS IN PLACE PRIOR TO A 2005 COURT OF APPEALS CASE." A memorandum from the Professional Fire Fighters of Maryland in support of both bills states that "[t]his change will return the treatment of dependent beneficiaries under § 9–503 to the posture they were in before the Court of Appeals ruling." Attorney Andrew Kahn, who also testified in support of the bill, described the *Johnson* case as catching "everybody completely by surprise." Kahn stated that there had previously been no need to have the word "dependent" in § 9–503(e) because "everybody knew what the

law was," and there was a general assumption that dependents were already included in the statute.[16]

The City argues that the evidence marshaled by Petitioner "consists of statements by proponents and opponents and it represents the opinions of the persons or organizations most interested in the bill." The City posits that this type of legislative history is necessarily "more subjective than objective and is a less trustworthy indicator of the intent of the legislature." The City adds that there are no deletions or additions in the drafts of the bill that might shed light on the thinking of lawmakers and would provide a "more reliable" form of legislative history.

The City further contends that the legislative history does not support Petitioner's claim that the law is remedial. For instance, the floor reports that describe the bills restoring "previous law" are incorrect. The City points out that our opinion in *Johnson*, 387 Md. at 22, 874 A.2d 439, established that the law in 2005 did not recognize dual benefits for dependents and this changed only after the 2007 amendments were enacted. Additionally, the City points to a statement in the Senate floor report that the bill would "treat all dependents equally." The City notes that, despite this language, the law still treats the dependents of workers who die in the line of duty differently than those who die from occupational diseases, allowing dual benefits to be collected only in the latter situation. The City's view is that, notwithstanding statements from witnesses in support of the bills that the practice in place prior to the *Johnson* opinion allowed for dual benefits, there is no evidence outside of that testimony to support those assertions.

16. Petitioner also points to a statement from the Montgomery County Office of Intergovernmental Relations in opposition to the Senate bill that seemed to characterize the Act as a "remedial statute." We, however, agree with the City that this statement referred to the Workers' Compensation Act as a whole, not the changes to § 9–503(e) specifically.

The City observes that there are statements in the legislative history that bolster its position that the law is a substantive one. The Fiscal and Policy Notes for the House and Senate bills state, "This bill extends this exemption to dependents of the listed workers." A similar statement is made in the Attorney General's letter to the Governor ("What the bill does is permit dependents to receive the full amount of the award even if they are also receiving benefits under the employee's retirement system."). These references characterize the bill as extending or permitting new benefits for dependents that did not exist before.

The bill files contain contradictory statements about whether the amendments were intended to "restore" prior law or were viewed as extending a benefit that was not previously conferred. Petitioner has marshaled a convincing amount of material to support the premise that at least *some* people viewed the law as always allowing dual recovery for dependents until we announced our decision in *Johnson*. But the state of the law at the time of our *Johnson* decision is clear: dependents were not included as beneficiaries under the plain language of § 9–503(e) at that time and, as a result, surviving dependents were not entitled to a dual recovery of benefits.

We conclude that the legislative history, viewed in its entirety, does not support viewing the 2007 changes as being remedial or procedural, as Petitioner urges. We agree with the City and the Court of Special Appeals that expanding the class of people who are able to collect dual benefits is a substantive change in the law that is different from the state of the law as it was at the time of our *Johnson* decision. This case is unlike *Langston*, where we found suggestions in the legislative history that lawmakers intended for the bill to apply retroactively, and we noted that opponents of the measure appeared concerned about this retroactive effect. 359 Md. at 416–417, 754 A.2d 389. It is also dissimilar from *Doe*, where we concluded that extending the statute of limitations on a claim was remedial because it merely improved on an already-existing remedy. 419 Md. at 703, 20 A.3d 787.

Instead, the 2007 amendments conferred a benefit on dependents that was previously not available to them. Before the change, the amount of workers' compensation death benefits paid to the dependents of deceased firefighters was reduced by the amount of the firefighters' pensions. By amending § 9–503(e), the General Assembly allowed for a larger pool of people—dependents—to be able to collect these dual benefits. Just as it was a substantive change in the law to give the Maryland Commission on Human Relations the ability to obtain temporary injunctions in *Amecom,* 278 Md. at 125, 360 A.2d 1, so, too, does enlarging the pool of beneficiaries constitute a substantive change in the law.

Finally, we cannot classify the change as remedial, even if some lawmakers might have viewed it as such, when the weight of all relevant considerations dictates the opposite conclusion. As we have said in the past, "the Court is not free to ignore the statutory requirements in order to remedy any perceived unfairness," *Johnson,* 387 Md. at 21, 874 A.2d 439, notwithstanding that the result might seem unfair to some.[17]

## V.

In sum, there is insufficient support in the legislative history to rebut the presumption that § 9–503(e) applies prospec-

---

17. Our interpretation is in accord with the maxim of statutory interpretation that states that "the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense." *Gardner v. State,* 420 Md. 1, 9, 20 A.3d 801 (2011) (quoting *State v. Johnson,* 415 Md. 413, 422, 2 A.3d 368 (2010)). As the City notes, employees and their dependents who are not specifically listed in § 9–503(e) have their workers' compensation benefits reduced by the amount of the pension benefits. This concept of "single recovery" dates back to the 1914 workers' compensation law, which stated in pertinent part, "Whenever and so long as by State law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Act is made for municipal employees injured in the course of employment such employees shall not be entitled to the benefits of this Act." Chapter 800 of the Acts of 1914. Given this history, it is not "absurd, illogical or incompatible with common sense" to interpret the 2007 amendments to § 9–503(e) as being prospective only because single recovery has long been a part of the law in Maryland.

tively. Moreover, the 2007 amendments are substantive, rather than procedural or remedial, which means they should not apply retroactively. Accordingly, we hold, as did the Court of Special Appeals, that the 2007 amendments to § 9–503(e) apply prospectively.[18]   As a result, Petitioner's claim, which was pending at the time of the enactment, is not covered by the change and is instead governed by the offset provisions in § 9–610.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.   COSTS TO BE PAID BY PETITIONER.**

BELL, C.J., HARRELL and CATHELL, JJ., dissent.

HARRELL, J., dissenting, in which BELL, C.J., and CATHELL, J. join.

I dissent.   Reading the same legislative history of S.B. 752–2007 and H.B. 1117–2007 (2007 Md. Laws chs. 350–51) as the Majority (Majority op. at 388–95, 61 A.3d at 44–49), I conclude that the General Assembly intended the amendments to § 9–503(e) of the Labor and Employment Article of the Maryland Code to apply to claims pending as of the effective date of the 2007 amendment.   The proponents of the bills, including sponsors in both houses, expressed clearly their view that our decision in *Johnson v. Mayor & City Council of Baltimore,* 387 Md. 1, 874 A.2d 439 (2005), was contrary to the Legislature's intent to cover dependents under the previous statute and practices as they existed prior to 2007.   In essence, the Legislature was of the view that we simply got it wrong in *Johnson.*   Chapters 350–51 of the 2007 Laws of Maryland made plain, i.e., clarified, that conviction.   The goal of the

---

**18.**   Because we conclude that there is not sufficient evidence that the General Assembly intended for the law to apply retroactively, or that it is procedural or remedial in nature, we do not reach the fourth factor of the retroactivity test, which states that, "even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against ex post facto laws." *Pautsch v. Md. Real Estate Comm'n,* 423 Md. 229, 263, 31 A.3d 489 (2011) (quoting *State Ethics Comm'n v. Evans,* 382 Md. 370, 381, 855 A.2d 364 (2004)).

amendment was to treat dependents of affected employees the same before and after 2007. *See* Majority op. at 390–92, 61 A.3d at 46–47.

One must, I submit, approach discovering the understanding of the meaning and significance of a legislative record differently than when we examine a trial record. The latter we expect to be developed exhaustively. A much less rigorous effort typically circumscribes how a legislative record is made. Although we should expect legislators (and those who draft bills at their behest) to say what they mean and mean what they say, there is an idiosyncratic vernacular code that they observe sometimes, and this case presents such a code word—clarify. This is legislative code for "we meant previously what we say now." It is a politic way of saying we disagree with the Court (at least more politic than "abrogate").

Upon my consideration of the legislative history, viewed in its entirety, I conclude that the 2007 changes were intended as remedial, as Petitioner urges. Thus, I would reverse the judgment of the Court of Special Appeals and direct reversal of the judgment of the Circuit Court for Baltimore City and remand to the Circuit Court with directions to affirm the decision of the Workers' Compensation Commission.

Chief Judge BELL and Judge CATHELL have authorized me to state that they join in the views expressed in this dissenting opinion.